**GUCOVSCHI LAW FIRM, PLLC.**
Adrian Gucovschi (State Bar No. 360988)
Nathaniel Haim Sari (State Bar No. 362634)
165 Broadway, Fl. 23
New York, NY 10006
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com
    nsari@gucovschilaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENA ROMAN and BRYAN DAWE, individually and on behalf of all others similarly situated, | Case No. |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| DUDE PRODUCTS, LLC., | |
| Defendant. | |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiffs Rena Roman and Bryan Dawe ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Dude Products, LLC. ("Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on their personal knowledge.

**NATURE OF THE ACTION**

1.     Plaintiffs bring this class action on behalf of themselves and all similarly situated consumers who purchased Dude Wipes flushable wipes (collectively, the "Products").[1]

2.     On the Products' packaging and online marketing, including on Amazon.com, Defendant prominently represents that the Products are made with "99% Water & Plant Based Ingredients" and are "Plant Based" (collectively, the "Plant Based Representations"). Defendant further represents that the Products are "Hypoallergenic," "Dermatologist Tested," "Sensitive," and "Safe on Sensitive Skin" (collectively, the "Hypoallergenic Representations"). For the five scented Products, Defendant attributes each Product's scent to specific named botanicals—"With Mint & Eucalyptus Oils," "Shea Butter And Coconut Scented," "Infused With Coffee," "Witch Hazel And Essential Geranium Oil," and "Light Scents Of Citrus And Sea Salt" (collectively, the "Scented Representations"). And Defendant represents that the Fragrance Free variant is "Fragrance Free" and "Unscented" (the "Fragrance Free Representations," and together with the Plant Based, Hypoallergenic, and Scented Representations, the "Representations").[2]

3.     Despite those Representations, however, (1) the Products contain multiple synthetic, non-plant-based ingredients, including cocamidopropyl PG-dimonium chloride phosphate, sodium benzoate, citric acid, and fragrance; (2) the Products contain recognized contact allergens,

---

[1] The Products include: Dude Wipes Fragrance Free, Dude Wipes Herbal Relief, Dude Wipes Mint Chill, Dude Wipes Odor Destroyer, Dude Wipes Coffee, and Dude Wipes Shea Butter. The Fragrance Free Product is sold in both standard and travel sizes.

[2] The Products and their Amazon Standard Identification Numbers ("ASINs") are: Fragrance Free (ASIN B01NAPQ4QP); Fragrance Free - Travel Size (ASIN B0F22N9WJ4), Mint Chill (ASIN B07TFLFCH9); Odor Destroyer (ASIN B0F22G1GPX); Shea Butter (ASIN B0D71GNV8T); Coffee/Morning Grind (ASIN B0GFPY52FQ); and Herbal Relief (ASIN B0D71XD987). These Representations appear throughout Defendant's packaging and Amazon.com listings, including on package labels and carousel badges and within the "Top Highlights," "Features & Specs," and "About this item" sections and the "A+" product description panels.

---

including sodium benzoate, fragrance, and chamomile; (3) the scented Products' scent derives predominantly from an undisclosed "fragrance" and Chamomilla Recutita (Matricaria) Flower Extract listed ahead of the named botanicals, rather than from the named botanicals themselves; and (4) the Fragrance Free variant contains Chamomilla Recutita (Matricaria) Flower Extract, an ingredient that functions as a fragrance, contradicting its "Fragrance Free" and "Unscented" labeling.

4.    Accordingly, Plaintiffs bring claims against Defendant for violations of (1) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; (3) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; (4) Violations of State Consumer Protection Statutes; (5) Breach of Express Warranty; and (6) Unjust Enrichment.

**PARTIES**

5.    Plaintiff Rena Roman is a citizen of California residing in San Jose, California. Plaintiff purchased Defendant's Fragrance Free Product for her personal use on or about May 23, 2025 from Defendant's official Amazon listing while residing in San Jose, California, for approximately $9.99.[3] Prior to making her purchase, Ms. Roman saw and relied on Defendant's Representations that the Products were made with "99% Water & Plant Based Ingredients" and were "Hypoallergenic," "Dermatologist Tested," and safe for "Sensitive" skin. Based on those Representations, Ms. Roman understood the Products to be composed exclusively of water and plant-derived ingredients and to be gentle, suitable for sensitive skin, and formulated and tested to minimize the likelihood of allergic reactions. Ms. Roman also saw and relied on Defendant's representations that the Fragrance Free Product was "Fragrance Free" and "Unscented," and understood those representations to mean the Product contained no ingredients that function as a fragrance. Ms. Roman relied on the Representations when she decided to purchase the Product. Accordingly, the Representations were part of the basis of her bargain, in that Ms. Roman would not have purchased the Product on the same terms had she known that the Representations were

_____

[3] DUDE Wipes Unscented Flushable Wipes (Fragrance Free), Amazon.com, https://www.amazon.com/dp/B01NAPQ4QP (last accessed May 21, 2026).

untrue. Furthermore, in making her purchase, Ms. Roman paid a price premium due to Defendant's false and misleading Representations. Ms. Roman, however, did not receive the benefit of the bargain because the Product did not, in fact, contain exclusively water and plant-derived ingredients, did not provide a reduced likelihood of allergic reactions, and was not free of ingredients that function as a fragrance. Instead, it contained multiple synthetic ingredients, recognized contact allergens, and an ingredient that functions as a fragrance. Had Ms. Roman known that Defendant's Representations were false and misleading, she would not have purchased the Product or would have paid substantially less for it.

6.     Ms. Roman continues to purchase flushable wipes and remains interested in purchasing wipes that are genuinely plant-based, hypoallergenic, and fragrance-free, including Defendant's Products. She would purchase the Products again if she could be confident that the "99% Water & Plant Based Ingredients," "Hypoallergenic," and "Fragrance Free" Representations were truthful. As matters stand, however, she cannot determine whether Defendant's labeling has been or will be corrected, and she is therefore unable to rely on Defendant's Representations when deciding whether to purchase the Products in the future.

7.     Plaintiff Bryan Dawe is a citizen of California residing in San Diego, California. On or about July 16, 2025, Mr. Dawe purchased Defendant's Mint Chill Product for approximately $9.99[4] and the Fragrance Free Product in both its Extra-Large[5] and Travel[6] sizes for approximately $11.22 and $23.99, respectively. Mr. Dawe made these purchases for his personal use while residing in San Diego, California. Mr. Dawe saw and relied on Defendant's Representations that the Products were made with "99% Water & Plant Based Ingredients" and were "Hypoallergenic," "Dermatologist Tested," and safe for "Sensitive" skin. Based on those Representations, Mr. Dawe understood the Products to be composed exclusively of water and plant-derived ingredients and to

---

[4] DUDE Wipes Mint Chill Flushable Wipes, Amazon.com, https://www.amazon.com/dp/B07TFLFCH9 (last accessed May 21, 2026).

[5] DUDE Wipes Unscented Flushable Wipes (Extra-Large), Amazon.com, https://www.amazon.com/dp/B01NAPQ4QP (last accessed May 21, 2026).

[6] DUDE Wipes Double Deuce Unscented Travel Wipes, Amazon.com, https://www.amazon.com/dp/B0F22N9WJ4 (last accessed May 21, 2026).

---

be gentle, suitable for sensitive skin, and formulated and tested to minimize the likelihood of allergic reactions. Mr. Dawe also saw and relied on Defendant's representation, on the front of the Mint Chill Product, that it was made "With Mint & Eucalyptus Oils," and understood the Mint Chill Product to be scented by mint and eucalyptus oils. Mr. Dawe further saw and relied on Defendant's representations that the Fragrance Free Product was "Fragrance Free" and "Unscented," and understood those representations to mean the Product contained no ingredient that functions as a fragrance. Mr. Dawe relied on the Representations when he decided to purchase the Products. Accordingly, the Representations were part of the basis of his bargain, in that Mr. Dawe would not have purchased the Products on the same terms had he known that the Representations were untrue. Furthermore, in making his purchases, Mr. Dawe paid a price premium due to Defendant's false and misleading Representations. Mr. Dawe, however, did not receive the benefit of the bargain because the Products did not, in fact, contain exclusively water and plant-derived ingredients, did not provide a reduced likelihood of allergic reactions, were not scented as represented, and were not free of ingredients that function as a fragrance. Had Mr. Dawe known that Defendant's Representations were false and misleading, he would not have purchased the Products or would have paid substantially less for them.

8.      Mr. Dawe continues to purchase flushable wipes and remains interested in purchasing wipes that are genuinely plant-based, hypoallergenic, and fragrance-free, and that are scented as represented, including Defendant's Products. He would purchase the Products again if he could be confident that the Representations were truthful. As matters stand, however, he cannot determine whether Defendant's labeling has been or will be corrected, and he is therefore unable to rely on Defendant's Representations when deciding whether to purchase the Products in the future.

9.      Defendant Dude Products, LLC. is a Delaware limited liability corporation with its principal place of business in Chicago, Illinois. Defendant manufactures, markets, and sells the Products online (including the at-issue Amazon listings) and through retail stores in California and the United States.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000.00 exclusive of interest and costs, and Plaintiffs, as well as most members of the proposed Classes, are citizens of states different from Defendant.

11. This Court has personal jurisdiction over Defendant because it conducts and transacts business in the State of California, including this District, thereby purposefully availing itself of the benefits of the forum. Furthermore, a substantial portion of the events giving rise to Plaintiffs' claims also occurred in this District, including Plaintiff Roman's purchase of the Products while residing in San Jose, California, in this District.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business in this District and a substantial part of the events giving rise to Plaintiffs' claims took place in this District.

**FACTUAL ALLEGATIONS**

A. **Consumer Demand for Plant-Based and Hypoallergenic Personal Care Products**

13. Clean label claims resonate with purchasers of personal care products and include "natural," "no artificial ingredients," and "plant-based."[7] At least one survey found that "Americans are paying more attention to ingredient lists, choosing clean ingredients and avoiding chemical sounding ingredients," while about half of Americans say they are worried about health risks from artificial ingredients, chemicals, and/or preservatives in foods (rising to 79% of health-focused shoppers), that 58% read product labels all or most of the time before purchasing a new item, and that, with price held constant, 42% of shoppers choose natural, "clean beauty" personal-care products.[8]

---

[7] NSF, Consumer Data on Health and Sustainability in Personal Care Purchasing (Mar. 6, 2025), https://www.nsf.org/news/consumers-consider-personal-care-organic-ingredients-important (74% of consumers consider organic ingredients important in personal care products).

[8] Acosta Group, Half of U.S. Shoppers Worried About Artificial Ingredients (Feb. 24, 2026), https://www.acosta.group/half-of-u-s-shoppers-worried-about-artificial-ingredients/.

---

14. In response to consumers' desire for natural and plant-based products, many companies, including Defendant, have scrambled to manufacture, market, and sell purportedly "natural" and "plant-based" products in an effort to gain market share. Rather than creating the natural, plant-based products consumers desire, Defendant has chosen to "greenwash" the Products and market them through deceptive labeling and advertising to convince consumers the Products are plant-based when, in reality, they contain synthetic and highly processed ingredients.

15. In response to frequent and pervasive greenwashing, the United States Federal Trade Commission ("FTC") created the "Green Guides" to help companies avoid making misleading and deceptive claims. As relevant here, the FTC stated: "Marketers, nevertheless, are responsible for substantiating consumers' reasonable understanding of 'biobased,' and other similar claims, such as 'plant-based,' in the context of their advertisements."[9]

16. Consumers also increasingly seek out and rely on terms like "hypoallergenic" when making purchasing decisions about personal care products. Allergic contact dermatitis is the fifth most prevalent skin disease in the United States, with direct annual medical costs exceeding $1.5 billion, and affects approximately 20% of the United States population.[10] Between 1996 and 2016, the prevalence of dermatitis caused by personal care products increased more than 2.7-fold.[11]

17. Preservatives and fragrances are the two most clinically significant allergen classes in cosmetic and personal care products.[12] Contact allergy to preservatives affects approximately 9–10% of patch-tested patients, with rising prevalence trends documented from 2014 to 2023.[13]

[9] 16 C.F.R. § 260 – Guides for the Use of Environmental Marketing Claims, p. 246, available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguidesstatement.pdf.

[10] Am. Acad. of Allergy, Asthma & Immunology, Contact Dermatitis Overview, https://www.aaaai.org/tools-for-the-public/conditions-library/allergies/contact-dermatitis-overview (last updated Dec. 11, 2023); see also Bickers DR, et al., The burden of skin diseases: 2004, 55 J. Am. Acad. Dermatol. 490 (2006).

[11] Warshaw EM et al. Contact dermatitis to personal care products is increasing (but different!) in males and females: North American Contact Dermatitis Group data, 1996–2016. J Am Acad Dermatol. 2021;85(6):1446–1455.

[12] Allergic Contact Dermatitis to Preservatives and Fragrances in Cosmetics, SKIN THERAPY LETTER (2011), https://www.skintherapyletter.com/allergic-contact-dermatitis/cosmetics/.

[13] Trends in Contact Allergy to Preservatives From 2014 to 2023, Contact Dermatitis (2025), https://pubmed.ncbi.nlm.nih.gov/40443262/.

18.    Researchers have found that 73.6% of personal care products marketed as "hypoallergenic" contained at least one potential contact allergen.[14] The term "hypoallergenic" is not defined or regulated by any federal agency or industry standard, and companies are free to apply it without reformulating their ingredients to reduce allergen content.[15] Defendant knows that "hypoallergenic" claims command a price premium and attract consumers with sensitive skin. Defendant applied the claim without reformulating the Products to reduce their allergen content. Within that same body of products, parfum/fragrance—a category that cross-reacts with British Society for Cutaneous Allergy ("BSCA") fragrance-mix allergens—was present in 40.9%, and at least one confirmed BSCA baseline-series allergen was identified in 38.0%.[16]

### B.    The Products and Defendant's Representations

19.    Defendant manufactures, markets, and sells the Products throughout the United States, including in California, through Amazon.com and retail stores. The Products are sold in six variants: Fragrance Free (available in standard and travel sizes), Herbal Relief, Mint Chill, Odor Destroyer, Coffee, and Shea Butter.[17]

20.    As depicted below, Defendant prominently represents that Products are (1) made with "99% Water & Plant Based Ingredients" and are "Plant Based"; (2) are "Hypoallergenic," "Dermatologist Tested," "Sensitive," and "Safe on Sensitive Skin"; (3) are scented by the named botanicals identified on their front labels; and (4) are "Fragrance Free" and "Unscented."

---

[14] Hiranput S, McAllister L, Hill G, Yesudian PD. Do hypoallergenic skincare products contain fewer potential contact allergens? Clin Exp Dermatol. 2024;49(4):386–387. https://doi.org/10.1093/ced/llad436.

[15] FDA, "Hypoallergenic" Cosmetics, https://www.fda.gov/cosmetics/cosmetics-labeling-claims/hypoallergenic-cosmetics (there are no Federal standards or definitions governing the term "hypoallergenic"; the term "means whatever a particular company wants it to mean").

[16] Hiranput, supra note 14 (same 208-product study; finding parfum/fragrance present in 40.9% of the surveyed products and at least one BSCA baseline-series allergen in 38.0%).

[17] The six variants are sold through Defendant's official Amazon.com storefront and at https://dudewipes.com/products/dude-wipes (last accessed May 21, 2026); see also supra note 2.

---

## Fragrance Free

ASIN B01NAPQ4QP    Scent: Fragrance Free

Amazon listing: https://www.amazon.com/dp/B01NAPQ4QP/

CAPTURED:    May 21, 2026 · pack of 3, 48 ct. Also sold in packs of 1, 6, 8, 12 (all 48 ct).

PACKAGE LABEL — FRONT



FRONT-LABEL SCENT PROMISE

FRAGRANCE FREE · 99% WATER & PLANT BASED INGREDIENTS



PACKAGE LABEL — BACK (INGREDIENT PANEL)



**1** 3-PACK PACKAGE — AMAZON MAIN IMAGE



99% Water & Plant Based Ingredients

**2** CAROUSEL — FRAGRANCE FREE / HYPOALLERGENIC



Subtitle: "UNSCENTED & HYPOALLERGENIC " · Bottom banner: 99% Water and Plant Based Ingredients

**3** CAROUSEL CLAIM BADGES — "WETTER CLEANS BETTER"



Hypoallergenic · Safe on Sensitive Skin · 99% Water & Plant Based Ingredients · Dermatologist Tested

**4** A+ PANEL — BODY COPY



"Made with 99% water and plant based ingredients , DUDE Wipes are hypoallergenic as well as alcohol and paraben-free."

### SAME CLAIMS ELSEWHERE ON THE AMAZON LISTING

**TOP HIGHLIGHTS · ABOUT THIS ITEM**

**01** Dermatologist Tested, Disposable, Flushable, Fragrance Free, Plant Based
TOP HIGHLIGHTS → MATERIAL FEATURE

**02** All, Combination, Dry, Normal, Sensitive
TOP HIGHLIGHTS → SKIN TYPE

**03** "DUDE Wipes Fragrance Free extra large adult flushable wipes are unscented and hypoallergenic for the most sensitive skin."
ABOUT THIS ITEM → BULLET 1 ("UPGRADE YOUR WIPING ROUTINE")

**04** "DUDE Wipes flushable wet wipes are made with 99% water and plant based ingredients . Infused with aloe, chamomile extract, and vitamin E to soothe and protect skin."
ABOUT THIS ITEM → BULLET 3 ("99% WATER & PLANT BASED")

**05** " Dermatologically tested and hypoallergenic so they're gentle on your sensitive sides."
ABOUT THIS ITEM → BULLET 4 ("PLASTIC-FREE & DERMATOLOGICALLY TESTED")

**FEATURES & SPECS**

**01** 99% Water, Cleansing, Dermatologist Tested , Hypoallergenic , Refreshing
FEATURES & SPECS → PRODUCT BENEFITS

**02** All, Combination, Dry, Normal, Sensitive
FEATURES & SPECS → SKIN TYPE

**SCENT CLAIM — WHERE IT RECURS**

**01** Fragrance Free
TOP HIGHLIGHTS → MATERIAL FEATURE

**02** " UNSCENTED & HYPOALLERGENIC"
PACKAGE LABEL SUBTITLE

**03** "DUDE Wipes Fragrance Free extra large adult flushable wipes are unscented and hypoallergenic for the most sensitive skin."
ABOUT THIS ITEM → BULLET 1 ("UPGRADE YOUR WIPING ROUTINE")

**INGREDIENT LIST**

Synthetic ingredients, allergens, and scent-contradicting ingredients highlighted

WATER, GLYCERIN, COCAMIDOPROPYL PG-DIMONIUM CHLORIDE PHOSPHATE , SODIUM BENZOATE , TOCOPHERYL ACETATE, ALOE BARBADENSIS LEAF EXTRACT, CHAMOMILLA RECUTITA (MATRICARIA) FLOWER EXTRACT , CITRIC ACID

## Mint Chill

ASIN B07TFLFCH9   Scent: Mint

Amazon listing: https://www.amazon.com/dp/B07TFLFCH9/

CAPTURED:   May 21, 2026 · pack of 3, 48 ct. Also sold in packs of 1, 6 (all 48 ct).

PACKAGE LABEL — FRONT



FRONT-LABEL SCENT PROMISE

MINT CHILL · WITH MINT & EUCALYPTUS OILS

PACKAGE LABEL — BACK (INGREDIENT PANEL)



PACKAGE LABEL — AMAZON MAIN IMAGE



99% Water & Plant Based Ingredients

A+ PANEL — BODY COPY



"Made with 99% water and plant based ingredients , DUDE Wipes are hypoallergenic as well as alcohol and paraben-free."

SAME CLAIMS ELSEWHERE ON THE AMAZON LISTING

TOP HIGHLIGHTS · ABOUT THIS ITEM

01 Dermatologist Tested, Disposable, Flushable, Naturally Scented, Plant Based
TOP HIGHLIGHTS → MATERIAL FEATURE

02 All, Combination, Dry, Normal, Sensitive
TOP HIGHLIGHTS → SKIN TYPE

03 "DUDE Wipes flushable wet wipes are made with 99% water and plant based ingredients . Infused with aloe, chamomile extract, and vitamin E to soothe and protect skin."
ABOUT THIS ITEM → BULLET 3 ("99% WATER & PLANT BASED")

04 " Dermatologically tested and hypoallergenic so they're gentle on your sensitive sides."
ABOUT THIS ITEM → BULLET 4 ("PLASTIC-FREE & DERMATOLOGICALLY TESTED")

FEATURES & SPECS

01 99% Water, Cleansing, Dermatologist Tested , Hypoallergenic , Refreshing
FEATURES & SPECS → PRODUCT BENEFITS

02 All, Combination, Dry, Normal, Sensitive
FEATURES & SPECS → SKIN TYPE

SCENT CLAIM — WHERE IT RECURS

01 Naturally Scented
TOP HIGHLIGHTS → MATERIAL FEATURE

02 "DUDE Wipes flushable wet wipes are made with 99% water and plant based ingredients. Infused with aloe, chamomile extract, and vitamin E to soothe and protect skin."
ABOUT THIS ITEM → BULLET 3 ("99% WATER & PLANT BASED")

INGREDIENT LIST

Synthetic ingredients, allergens, and scent-contradicting ingredients highlighted

WATER, GLYCERIN, COCAMIDOPROPYL PG-DIMONIUM CHLORIDE PHOSPHATE , SODIUM BENZOATE , TOCOPHERYL ACETATE, ALOE BARBADENSIS LEAF EXTRACT, CHAMOMILLA RECUTITA (MATRICARIA) FLOWER EXTRACT , CITRIC ACID , FRAGRANCE , MENTHA ARVENSIS LEAF EXTRACT, MENTHA ARVENSIS LEAF OIL, EUCALYPTUS GLOBULUS LEAF OIL, MELALEUCA ALTERNIFOLIA (TEA TREE) LEAF OIL, CITRUS LIMON (LEMON) PEEL EXTRACT, SALVIA SCLAREA (CLARY) OIL, ROSMARINUS OFFICINALIS (ROSEMARY) LEAF OIL

### Odor Destroyer

ASIN B0F22G1GPX   Scent: Odor Destroyer

Amazon listing: https://www.amazon.com/dp/B0F22G1GPX/

CAPTURED:   May 21, 2026 · pack of 3, 48 ct. Also sold in packs of 6 (all 48 ct).



PACKAGE LABEL — FRONT

FRONT-LABEL SCENT PROMISE

ODOR DESTROYER · LIGHT SCENTS OF CITRUS AND SEA SALT



PACKAGE LABEL — BACK (INGREDIENT PANEL)

**1**

A+ PANEL — BODY COPY



**MADE WITH PLANT BASED FIBERS**

Made with 99% water and plant based ingredients, DUDE Wipes are hypoallergenic as well as alcohol and paraben-free.

| EXTRA LARGE | LIGHTLY SCENTED | FEEL FRESH EVERYWHERE | ALOE & VITAMIN-E |

"Made with 99% water and plant based ingredients , DUDE Wipes are hypoallergenic as well as alcohol and paraben-free."

### SAME CLAIMS ELSEWHERE ON THE AMAZON LISTING

**TOP HIGHLIGHTS · ABOUT THIS ITEM**

01 Dermatologist Tested, Disposable, Flushable, Odor Neutralizing, Plant Based
TOP HIGHLIGHTS → MATERIAL FEATURE

02 All, Combination, Dry, Normal, Sensitive
TOP HIGHLIGHTS → SKIN TYPE

03 "Made with 99% water and plant-based ingredients , DUDE wipes are alcohol-free, paraben-free, and hypoallergenic to protect your most sensitive skin from irritation."
ABOUT THIS ITEM → BULLET 2 ("CLEAN FORMULA")

**FEATURES & SPECS**

01 Cleansing, Dermatologist Tested , Hypoallergenic , Odor Neutralizing, Refreshing
FEATURES & SPECS → PRODUCT BENEFITS

02 All, Combination, Dry, Normal, Sensitive
FEATURES & SPECS → SKIN TYPE

**SCENT CLAIM — WHERE IT RECURS**

01 "ODOR DESTROYER · LIGHT SCENTS OF CITRUS AND SEA SALT "
PACKAGE LABEL (FRONT, PRINCIPAL DISPLAY PANEL)

02 " Lightly scented with Sea Salt Mineral scent "
ABOUT THIS ITEM → BULLET 1 ("SEA SALT MINERAL SCENT")

03 " Lightly scented "
A+ PANEL — BODY COPY

04 Odor Neutralizing
TOP HIGHLIGHTS → MATERIAL FEATURE

05 No citrus extract, no citrus oil, no sea salt anywhere in the ingredient panel; FRAGRANCE is the only scent source (position 8 of 9).
INGREDIENT PANEL — ABSENT INGREDIENTS

**INGREDIENT LIST**

Synthetic ingredients, allergens, and scent-contradicting ingredients highlighted

WATER, GLYCERIN, COCAMIDOPROPYL PG-DIMONIUM CHLORIDE PHOSPHATE , SODIUM BENZOATE , TOCOPHERYL ACETATE, ALOE BARBADENSIS LEAF EXTRACT, CHAMOMILLA RECUTITA (MATRICARIA) FLOWER EXTRACT , FRAGRANCE , CITRIC ACID

---

## Shea Butter

ASIN B0D71GNV8T   Scent: Shea BUTTer Smooth

Amazon listing: https://www.amazon.com/dp/B0D71GNV8T/

CAPTURED:  May 21, 2026 · pack of 3, 48 ct. Also sold in packs of 6 (all 48 ct).

| PACKAGE LABEL – FRONT | | PACKAGE LABEL – BACK (INGREDIENT PANEL) |
|---|---|---|
|  | FRONT-LABEL SCENT PROMISE<br><br>SHEA BUTTER SMOOTH · SHEA BUTTER AND COCONUT SCENTED |  |

A+ PANEL – BODY COPY



"Made with 99% water and plant based ingredients , DUDE Wipes are hypoallergenic as well as alcohol and paraben-free."

### SAME CLAIMS ELSEWHERE ON THE AMAZON LISTING

**TOP HIGHLIGHTS · ABOUT THIS ITEM**

01  Dermatologist Tested, Disposable, Flushable, Naturally Scented, Plant Based
TOP HIGHLIGHTS → MATERIAL FEATURE

02  All, Combination, Dry, Normal, Sensitive
TOP HIGHLIGHTS → SKIN TYPE

03  "These velvet-soft shea butter-soaked wipes are made with 99% water and plant-based ingredients like shea butter and coconut."
ABOUT THIS ITEM → BULLET 2 ("SHEA BUTTER SMOOTH WIPES")

**FEATURES & SPECS**

01  99% Water, Cleansing, Dermatologist Tested , Hypoallergenic , Refreshing
FEATURES & SPECS → PRODUCT BENEFITS

02  All, Combination, Dry, Normal, Sensitive
FEATURES & SPECS → SKIN TYPE

**SCENT CLAIM – WHERE IT RECURS**

01  Naturally Scented
TOP HIGHLIGHTS → MATERIAL FEATURE

02  "These velvet-soft shea butter-soaked wipes are made with 99% water and plant-based ingredients like shea butter and coconut ."
ABOUT THIS ITEM → BULLET 2 ("SHEA BUTTER SMOOTH WIPES")

**INGREDIENT LIST**

Synthetic ingredients, allergens, and scent-contradicting ingredients highlighted

WATER, GLYCERIN, COCAMIDOPROPYL PG-DIMONIUM CHLORIDE PHOSPHATE , SODIUM BENZOATE , TOCOPHERYL ACETATE, ALOE BARBADENSIS LEAF EXTRACT, CHAMOMILLA RECUTITA (MATRICARIA) FLOWER EXTRACT , CITRIC ACID , FRAGRANCE , BUTYROSPERMUM PARKII (SHEA) BUTTER, COCOS NUCIFERA (COCONUT) OIL, THEOBROMA CACAO (COCOA) SEED BUTTER

---

## Coffee (Morning Grind)

ASIN B0GFPY52FQ   Scent: Coffee

Amazon listing: https://www.amazon.com/dp/B0GFPY52FQ/

CAPTURED:   May 21, 2026 · pack of 3, 48 ct. Also sold in packs of 6 (all 48 ct).

PACKAGE LABEL — FRONT



FRONT-LABEL SCENT PROMISE

MORNING GRIND · INFUSED WITH COFFEE

PACKAGE LABEL — BACK (INGREDIENT PANEL)



① CAROUSEL CLAIM BADGES — "WETTER CLEANS BETTER"



Hypoallergenic · 99% Water & Plant Based Ingredients · Dermatologist Tested

② A+ PANEL — BODY COPY



"Made with 99% water and plant based ingredients , DUDE Wipes are hypoallergenic as well as alcohol and paraben-free."

### SAME CLAIMS ELSEWHERE ON THE AMAZON LISTING

**TOP HIGHLIGHTS · ABOUT THIS ITEM**

01  Dermatologist Tested, Disposable, Flushable, Naturally Scented, Plant Based
TOP HIGHLIGHTS → MATERIAL FEATURE

02  All, Combination, Dry, Normal, Sensitive
TOP HIGHLIGHTS → SKIN TYPE

03  "Morning Grind flushable adult wipes are made with 99% water and plant-based ingredients , are dermatologically tested , and are infused with aloe, chamomile extract, and vitamin E for a refreshing clean."
ABOUT THIS ITEM → BULLET 2 ("MADE WITH 99% WATER & PLANT-BASED INGREDIENTS")

**FEATURES & SPECS**

01  99% Water, Cleansing, Dermatologist Tested , Hypoallergenic , Refreshing
FEATURES & SPECS → PRODUCT BENEFITS

02  All, Combination, Dry, Normal, Sensitive
FEATURES & SPECS → SKIN TYPE

**SCENT CLAIM — WHERE IT RECURS**

01  Naturally Scented
TOP HIGHLIGHTS → MATERIAL FEATURE

02  "Morning Grind flushable adult wipes are made with 99% water and plant-based ingredients, are dermatologically tested, and are infused with aloe, chamomile extract, and vitamin E for a refreshing clean ."
ABOUT THIS ITEM → BULLET 2 ("MADE WITH 99% WATER & PLANT-BASED INGREDIENTS")

**INGREDIENT LIST**

Synthetic ingredients, allergens, and scent-contradicting ingredients highlighted

WATER, GLYCERIN, COCAMIDOPROPYL PG-DIMONIUM CHLORIDE PHOSPHATE , SODIUM BENZOATE , ALOE BARBADENSIS LEAF EXTRACT, CHAMOMILLA RECUTITA (MATRICARIA) FLOWER EXTRACT , TOCOPHERYL ACETATE, FRAGRANCE , COFFEA ARABICA (COFFEE) SEED OIL, CITRIC ACID

---

## Herbal Relief

ASIN B0D71XD987   Scent: Herbal Relief

Amazon listing: https://www.amazon.com/dp/B0D71XD987/

CAPTURED:  May 21, 2026 · pack of 3, 48 ct. Also sold in packs of 6 (all 48 ct).

PACKAGE LABEL — FRONT



FRONT-LABEL SCENT PROMISE

HERBAL RELIEF · WITCH HAZEL AND ESSENTIAL GERANIUM OIL



PACKAGE LABEL — BACK (INGREDIENT PANEL)



**1** PACKAGE LABEL — AMAZON MAIN IMAGE



99% Water & Plant Based Ingredients

**2** A+ PANEL — BODY COPY



"Made with 99% water and plant based ingredients , DUDE Wipes are hypoallergenic as well as alcohol and paraben-free."

### SAME CLAIMS ELSEWHERE ON THE AMAZON LISTING

**TOP HIGHLIGHTS · ABOUT THIS ITEM**

01  Dermatologist Tested, Disposable, Flushable, Infused with Witch Hazel, Plant Based
TOP HIGHLIGHTS → MATERIAL FEATURE

02  All, Combination, Dry, Normal, Sensitive
TOP HIGHLIGHTS → SKIN TYPE

03  "Made with 99% water & plant-based ingredients , our butt wipes are formulated for a gentle, more refreshing feeling than toilet paper."
ABOUT THIS ITEM → BULLET 2 ("HERBAL INFUSED EXTRA RELIEF")

**FEATURES & SPECS**

01  Cleansing, Dermatologist Tested , Hypoallergenic , Infused with Witch Hazel, Soothing
FEATURES & SPECS → PRODUCT BENEFITS

02  All, Combination, Dry, Normal, Sensitive
FEATURES & SPECS → SKIN TYPE

**SCENT CLAIM — WHERE IT RECURS**

01  Infused with Witch Hazel
TOP HIGHLIGHTS → MATERIAL FEATURE

02  Cleansing, Dermatologist Tested, Hypoallergenic, Infused with Witch Hazel , Soothing
FEATURES & SPECS → PRODUCT BENEFITS

03  "Made with 99% water & plant-based ingredients, our butt wipes are formulated for a gentle, more refreshing feeling than toilet paper."
ABOUT THIS ITEM → BULLET 2 ("HERBAL INFUSED EXTRA RELIEF")

**INGREDIENT LIST**

Synthetic ingredients, allergens, and scent-contradicting ingredients highlighted

WATER, GLYCERIN, COCAMIDOPROPYL PG-DIMONIUM CHLORIDE PHOSPHATE , SODIUM BENZOATE , TOCOPHERYL ACETATE, ALOE BARBADENSIS LEAF EXTRACT, CHAMOMILLA RECUTITA (MATRICARIA) FLOWER EXTRACT , PELARGONIUM GRAVEOLENS OIL, HAMAMELIS VIRGINIANA (WITCH HAZEL) LEAF EXTRACT, CITRIC ACID

| Representation | Fragrance Free B01NAPQ4QP | Mint Chill B07TFLFCH9 | Odor Destroyer B0F22G1GPX | Shea Butter B0D71GNV8T | Coffee (Morning Grind) B0GFPY52FQ | Herbal Relief B0D71XD987 |
|---|---|---|---|---|---|---|
| Plant Based Ingredients | "99% Water and Plant Based Ingredients" PACKAGE LABEL BOTTOM BANNER<br><br>"99% Water & Plant Based Ingredients" CAROUSEL BADGE – "WETTER CLEANS BETTER"<br><br>"Plant Based" TOP HIGHLIGHTS → MATERIAL FEATURE<br><br>"99% water and plant based ingredients" A+ PANEL BODY COPY<br><br>"99% water and plant based ingredients" ABOUT THIS ITEM → BULLET 3 | "99% Water & Plant Based Ingredients" PACKAGE LABEL BANNER<br><br>"Plant Based" TOP HIGHLIGHTS → MATERIAL FEATURE<br><br>"99% Water and plant based ingredients" A+ PANEL BODY COPY<br><br>"99% water and plant based ingredients" ABOUT THIS ITEM → BULLET 3 | "Plant Based" TOP HIGHLIGHTS → MATERIAL FEATURE<br><br>"99% water and plant based ingredients" A+ PANEL BODY COPY<br><br>"99% water and plant-based ingredients" ABOUT THIS ITEM → BULLET 2 | "Plant Based" TOP HIGHLIGHTS → MATERIAL FEATURE<br><br>"99% water and plant based ingredients" A+ PANEL BODY COPY<br><br>"99% water and plant-based ingredients like shea butter and coconut" ABOUT THIS ITEM → BULLET 2 | "99% Water & Plant Based Ingredients" CAROUSEL BADGE – "WETTER CLEANS BETTER"<br><br>"Plant Based" TOP HIGHLIGHTS → MATERIAL FEATURE<br><br>"99% water and plant based ingredients" A+ PANEL BODY COPY<br><br>"99% water and plant-based ingredients" ABOUT THIS ITEM → BULLET 2 | "99% Water & Plant Based Ingredients" PACKAGE LABEL BANNER<br><br>"Plant Based" TOP HIGHLIGHTS → MATERIAL FEATURE<br><br>"99% water and plant based ingredients" A+ PANEL BODY COPY<br><br>"99% water & plant-based ingredients" ABOUT THIS ITEM → BULLET 2 |
| Hypoallergenic / Dermatologist Tested / Sensitive | "UNSCENTED & HYPOALLERGENIC" PACKAGE LABEL SUBTITLE<br><br>"Hypoallergenic" CAROUSEL BADGE – "WETTER CLEANS BETTER"<br><br>"Safe on Sensitive Skin" CAROUSEL BADGE – "WETTER CLEANS BETTER"<br><br>"Dermatologist Tested" CAROUSEL BADGE – "WETTER CLEANS BETTER"<br><br>"Sensitive" TOP HIGHLIGHTS → SKIN TYPE<br><br>"Dermatologist Tested" TOP HIGHLIGHTS → MATERIAL FEATURE<br><br>"Sensitive" FEATURES & SPECS → SKIN TYPE<br><br>"Dermatologist Tested" FEATURES & SPECS → PRODUCT BENEFITS<br><br>"Hypoallergenic" FEATURES & SPECS → PRODUCT BENEFITS<br><br>"hypoallergenic" A+ PANEL BODY COPY<br><br>"hypoallergenic for the most sensitive skin" ABOUT THIS ITEM → BULLET 1<br><br>"Dermatologically tested" ABOUT THIS ITEM → BULLET 4<br><br>"hypoallergenic" ABOUT THIS ITEM → BULLET 4<br><br>"gentle on your sensitive sides" ABOUT THIS ITEM → BULLET 4 | "Sensitive" TOP HIGHLIGHTS → SKIN TYPE<br><br>"Dermatologist Tested" TOP HIGHLIGHTS → MATERIAL FEATURE<br><br>"Sensitive" FEATURES & SPECS → SKIN TYPE<br><br>"Dermatologist Tested" FEATURES & SPECS → PRODUCT BENEFITS<br><br>"Hypoallergenic" FEATURES & SPECS → PRODUCT BENEFITS<br><br>"hypoallergenic" A+ PANEL BODY COPY<br><br>"Dermatologically tested" ABOUT THIS ITEM → BULLET 4<br><br>"hypoallergenic" ABOUT THIS ITEM → BULLET 4<br><br>"gentle on your sensitive sides" ABOUT THIS ITEM → BULLET 4 | "Sensitive" TOP HIGHLIGHTS → SKIN TYPE<br><br>"Dermatologist Tested" TOP HIGHLIGHTS → MATERIAL FEATURE<br><br>"Sensitive" FEATURES & SPECS → SKIN TYPE<br><br>"Dermatologist Tested" FEATURES & SPECS → PRODUCT BENEFITS<br><br>"Hypoallergenic" FEATURES & SPECS → PRODUCT BENEFITS<br><br>"hypoallergenic" A+ PANEL BODY COPY<br><br>"hypoallergenic to protect your most sensitive skin" ABOUT THIS ITEM → BULLET 2 | "Sensitive" TOP HIGHLIGHTS → SKIN TYPE<br><br>"Dermatologist Tested" TOP HIGHLIGHTS → MATERIAL FEATURE<br><br>"Sensitive" FEATURES & SPECS → SKIN TYPE<br><br>"Dermatologist Tested" FEATURES & SPECS → PRODUCT BENEFITS<br><br>"Hypoallergenic" FEATURES & SPECS → PRODUCT BENEFITS<br><br>"hypoallergenic" A+ PANEL BODY COPY | "Hypoallergenic" CAROUSEL BADGE – "WETTER CLEANS BETTER"<br><br>"Dermatologist Tested" CAROUSEL BADGE – "WETTER CLEANS BETTER"<br><br>"Sensitive" TOP HIGHLIGHTS → SKIN TYPE<br><br>"Dermatologist Tested" TOP HIGHLIGHTS → MATERIAL FEATURE<br><br>"Sensitive" FEATURES & SPECS → SKIN TYPE<br><br>"Dermatologist Tested" FEATURES & SPECS → PRODUCT BENEFITS<br><br>"Hypoallergenic" FEATURES & SPECS → PRODUCT BENEFITS<br><br>"hypoallergenic" A+ PANEL BODY COPY<br><br>"dermatologically tested" ABOUT THIS ITEM → BULLET 2 | "Sensitive" TOP HIGHLIGHTS → SKIN TYPE<br><br>"Dermatologist Tested" TOP HIGHLIGHTS → MATERIAL FEATURE<br><br>"Sensitive" FEATURES & SPECS → SKIN TYPE<br><br>"Dermatologist Tested" FEATURES & SPECS → PRODUCT BENEFITS<br><br>"Hypoallergenic" FEATURES & SPECS → PRODUCT BENEFITS<br><br>"hypoallergenic" A+ PANEL BODY COPY |

| | FRAGRANCE FREE | MINT CHILL · WITH MINT & EUCALYPTUS OILS | ODOR DESTROYER · LIGHT SCENTS OF CITRUS AND SEA SALT | SHEA BUTTER SMOOTH · SHEA BUTTER AND COCONUT SCENTED | MORNING GRIND · INFUSED WITH COFFEE | HERBAL RELIEF · WITCH HAZEL AND ESSENTIAL GERANIUM OIL |
|---|---|---|---|---|---|---|
| **Scent representation**<br>FRONT-LABEL PROMISE VS. INGREDIENT-PANEL ORDER | FRAGRANCE FREE · 99% WATER & PLANT BASED INGREDIENTS<br>FRONT LABEL, PACKAGE FACE<br><br>Chamomilla Recutita (Matricaria) Flower Extract<br>POSITION 7 OF 8 — SCENT-BEARING BOTANICAL | FRAGRANCE<br>POSITION 9 OF 16 — INGREDIENT PANEL<br><br>Chamomilla Recutita (Matricaria) Flower Extract<br>POSITION 7 OF 16 — SCENT-BEARING BOTANICAL<br><br>*Mentha Arvensis Leaf Extract*<br>POSITION 10 OF 16 — NAMED ON FRONT LABEL<br><br>*Mentha Arvensis Leaf Oil*<br>POSITION 11 OF 16 — NAMED ON FRONT LABEL<br><br>*Eucalyptus Globulus Leaf Oil*<br>POSITION 12 OF 16 — NAMED ON FRONT LABEL | FRAGRANCE<br>POSITION 8 OF 9 — INGREDIENT PANEL<br><br>Chamomilla Recutita (Matricaria) Flower Extract<br>POSITION 7 OF 9 — SCENT-BEARING BOTANICAL | FRAGRANCE<br>POSITION 9 OF 12 — INGREDIENT PANEL<br><br>Chamomilla Recutita (Matricaria) Flower Extract<br>POSITION 7 OF 12 — SCENT-BEARING BOTANICAL<br><br>*Butyrospermum Parkii (SHEA) Butter*<br>POSITION 10 OF 12 — NAMED ON FRONT LABEL<br><br>*Cocos Nucifera (COCONUT) Oil*<br>POSITION 11 OF 12 — NAMED ON FRONT LABEL | FRAGRANCE<br>POSITION 8 OF 10 — INGREDIENT PANEL<br><br>Chamomilla Recutita (Matricaria) Flower Extract<br>POSITION 6 OF 10 — SCENT-BEARING BOTANICAL<br><br>*Coffea Arabica (COFFEE) Seed Oil*<br>POSITION 9 OF 10 — NAMED ON FRONT LABEL | Chamomilla Recutita (Matricaria) Flower Extract<br>POSITION 7 OF 10 — SCENT-BEARING BOTANICAL<br><br>*Hamamelis Virginiana (WITCH HAZEL) Leaf Extract*<br>POSITION 9 OF 10 — NAMED ON FRONT LABEL<br><br>*Pelargonium Graveolens Oil*<br>POSITION 8 OF 10 — NAMED ON FRONT LABEL |
| **At-issue ingredients** | **Cocamidopropyl PG-Dimonium Chloride Phosphate**<br>SYNTHETIC SURFACTANT / PRESERVATIVE / ACID<br><br>**Citric Acid**<br>SYNTHETIC SURFACTANT / PRESERVATIVE / ACID<br><br>**Sodium Benzoate**<br>ALLERGEN CONTRADICTING "HYPOALLERGENIC"<br><br>**Chamomilla Recutita (MATRICARIA) Flower Extract**<br>ALLERGEN CONTRADICTING "HYPOALLERGENIC"<br><br>**Chamomilla Recutita (MATRICARIA) Flower Extract**<br>SCENT-BEARING INGREDIENT CONTRADICTING FRONT-LABEL SCENT REP | **Cocamidopropyl PG-Dimonium Chloride Phosphate**<br>SYNTHETIC SURFACTANT / PRESERVATIVE / ACID<br><br>**Citric Acid**<br>SYNTHETIC SURFACTANT / PRESERVATIVE / ACID<br><br>**Sodium Benzoate**<br>ALLERGEN CONTRADICTING "HYPOALLERGENIC"<br><br>**Fragrance**<br>ALLERGEN CONTRADICTING "HYPOALLERGENIC"<br><br>**Chamomilla Recutita (MATRICARIA) Flower Extract**<br>ALLERGEN CONTRADICTING "HYPOALLERGENIC"<br><br>**Chamomilla Recutita (MATRICARIA) Flower Extract**<br>SCENT-BEARING INGREDIENT CONTRADICTING FRONT-LABEL SCENT REP | **Cocamidopropyl PG-Dimonium Chloride Phosphate**<br>SYNTHETIC SURFACTANT / PRESERVATIVE / ACID<br><br>**Citric Acid**<br>SYNTHETIC SURFACTANT / PRESERVATIVE / ACID<br><br>**Sodium Benzoate**<br>ALLERGEN CONTRADICTING "HYPOALLERGENIC"<br><br>**Fragrance**<br>ALLERGEN CONTRADICTING "HYPOALLERGENIC"<br><br>**Chamomilla Recutita (MATRICARIA) Flower Extract**<br>ALLERGEN CONTRADICTING "HYPOALLERGENIC"<br><br>**Chamomilla Recutita (MATRICARIA) Flower Extract**<br>SCENT-BEARING INGREDIENT CONTRADICTING FRONT-LABEL SCENT REP | **Cocamidopropyl PG-Dimonium Chloride Phosphate**<br>SYNTHETIC SURFACTANT / PRESERVATIVE / ACID<br><br>**Citric Acid**<br>SYNTHETIC SURFACTANT / PRESERVATIVE / ACID<br><br>**Sodium Benzoate**<br>ALLERGEN CONTRADICTING "HYPOALLERGENIC"<br><br>**Fragrance**<br>ALLERGEN CONTRADICTING "HYPOALLERGENIC"<br><br>**Chamomilla Recutita (MATRICARIA) Flower Extract**<br>ALLERGEN CONTRADICTING "HYPOALLERGENIC"<br><br>**Chamomilla Recutita (MATRICARIA) Flower Extract**<br>SCENT-BEARING INGREDIENT CONTRADICTING FRONT-LABEL SCENT REP | **Cocamidopropyl PG-Dimonium Chloride Phosphate**<br>SYNTHETIC SURFACTANT / PRESERVATIVE / ACID<br><br>**Citric Acid**<br>SYNTHETIC SURFACTANT / PRESERVATIVE / ACID<br><br>**Sodium Benzoate**<br>ALLERGEN CONTRADICTING "HYPOALLERGENIC"<br><br>**Fragrance**<br>ALLERGEN CONTRADICTING "HYPOALLERGENIC"<br><br>**Chamomilla Recutita (MATRICARIA) Flower Extract**<br>ALLERGEN CONTRADICTING "HYPOALLERGENIC"<br><br>**Chamomilla Recutita (MATRICARIA) Flower Extract**<br>SCENT-BEARING INGREDIENT CONTRADICTING FRONT-LABEL SCENT REP | **Cocamidopropyl PG-Dimonium Chloride Phosphate**<br>SYNTHETIC SURFACTANT / PRESERVATIVE / ACID<br><br>**Citric Acid**<br>SYNTHETIC SURFACTANT / PRESERVATIVE / ACID<br><br>**Sodium Benzoate**<br>ALLERGEN CONTRADICTING "HYPOALLERGENIC"<br><br>**Chamomilla Recutita (MATRICARIA) Flower Extract**<br>ALLERGEN CONTRADICTING "HYPOALLERGENIC"<br><br>**Chamomilla Recutita (MATRICARIA) Flower Extract**<br>SCENT-BEARING INGREDIENT CONTRADICTING FRONT-LABEL SCENT REP |

21.    Defendant's Representations have been pervasive and continuous throughout the Class Period. For at least the past three years, Defendant has made the Plant Based, Hypoallergenic, Scented, and Fragrance Free Representations across every channel through which it sells and markets the Products—on the Products' packaging and labeling, in its official Amazon listings (including the product titles, carousel images and claim badges, the "Top Highlights," "Features & Specs," and "About this item" sections, and the "A+" product-description panels), and in its online and social-media marketing. The Representations appear uniformly across the Products' variants and have been disseminated to every consumer who viewed the Products' listings or packaging. As a result of this pervasive and longstanding dissemination, Plaintiffs and the Class were exposed to, and reasonably relied upon, Defendant's Representations in deciding to purchase the Products.

22.    Despite these Representations, the Products contain multiple synthetic, non-plant-based ingredients—including cocamidopropyl PG-dimonium chloride phosphate, sodium benzoate, citric acid, and fragrance—as well as recognized contact allergens and an ingredient that functions as a fragrance, as set forth below.

**C.    The Products' Ingredients**

23.    The Products' ingredients include multiple synthetic, non-plant-based compounds, three recognized contact allergens, and an ingredient that functions as a fragrance. Each is described below.

*i.    Cocamidopropyl PG-Dimonium Chloride Phosphate Is a Synthetic Ingredient*

24.    Cocamidopropyl PG-dimonium chloride phosphate is an industrially manufactured quaternary ammonium phosphate surfactant. Although its fatty acid precursors are sourced from coconut oil, the ingredient is the result of industrial chemical synthesis performed on plant-derived feedstocks—involving amidation of coconut fatty acid residues, followed by quaternization and phosphorylation—that transforms those precursors into a finished quaternary ammonium phosphate compound that is not a naturally occurring plant lipid and does not exist in nature in that

finished chemical form.[18] COSMILE Europe, an ingredient information database drawing on INCI/CosIng terminology, classifies the ingredient Sodium Cocamidopropyl PG-Dimonium Chloride Phosphate (the sodium salt form of the same ingredient class) with an origin of "synthetic/plant," and further explains that the surfactants of this class used in cosmetic products are "primarily produced synthetically on the basis of vegetable raw materials," reflecting that the final molecule is a product of industrial chemical manufacturing, not extraction from a plant source.[19] No reasonable consumer would identify an industrially synthesized quaternary ammonium phosphate surfactant as a "plant-based ingredient."

### ii. Sodium Benzoate Is a Synthetic Ingredient and a Recognized Contact Allergen

25. Sodium benzoate is the sodium salt of benzoic acid and is manufactured industrially by neutralizing synthetically produced benzoic acid with sodium hydroxide. The benzoic acid used in commercial production is itself a synthesized chemical, produced through the liquid-phase oxidation of toluene — a petroleum-derived feedstock — and is not extracted from any plant source.[20] The sodium benzoate used as a preservative in cosmetic and personal care products is accordingly a synthetic ingredient, not a plant-based one. Sodium benzoate is also a documented contact allergen and trigger of adverse cutaneous reactions in susceptible individuals. Dermatology references and patch-test literature identify sodium benzoate and related benzoic-acid ingredients as substances associated with allergic contact dermatitis and contact urticaria.[21] A 2025

[18] See COSMILE Europe, Sodium Cocamidopropyl PG-Dimonium Chloride Phosphate, https://cosmileeurope.eu/inci/detail/14683/sodium-cocamidopropyl-pg-dimonium-chloride-phosphate/ (last visited May 21, 2026) (describing "Cocamidopropyl" as "a coconut fatty acid amidopropyl residue," "Dimonium" as "a quaternary dimethyl ammonium salt," and "Phosphates" as "salts or esters of phosphoric acid," with origin classified as "synthetic/plant"); see also Ki Ho Park & Jong Choo Lim, Synthesis of Phospholipid Based Zwitterionic Surfactant.

[19] COSMILE Europe, Sodium Cocamidopropyl PG-Dimonium Chloride Phosphate, https://cosmileeurope.eu/inci/detail/14683/sodium-cocamidopropyl-pg-dimonium-chloride-phosphate/ (last visited May 21, 2026) (origin: "synthetic/plant"; surfactants of this class are "primarily produced synthetically on the basis of vegetable raw materials").

[20] World Health Organization / International Programme on Chemical Safety, Benzoic Acid and Sodium Benzoate, Concise International Chemical Assessment Document No. 26, §§ 4.1, 4.2.1, 4.2.2 (Geneva 2000), https://www.inchem.org/documents/cicads/cicads/cicad26.htm ("Benzoic acid is produced exclusively by the liquid-phase oxidation of toluene"; "Sodium benzoate is produced by the neutralization of benzoic acid with sodium hydroxide").

[21] Ngan V, Oakley A, Sodium Benzoate Allergy, DermNet (last updated Jan. 2023), https://dermnetnz.org/topics/sodium-benzoate-allergy.

retrospective patch-test study of 3,198 patients found allergic positive reactions to sodium benzoate in 1.8% of tested subjects, with clinical relevance confirmed in 67% of allergic-positive cases, and concluded that sodium benzoate is an "important allergen" that should be included in multiple patch-test series.[22] Sodium benzoate has also been documented to cause immediate contact urticaria-type reactions and, in susceptible individuals, delayed allergic contact dermatitis when applied to the skin.[23] The Cosmetic Ingredient Review ("CIR") Expert Panel has acknowledged that sodium benzoate and related benzoic-acid ingredients can produce "nonimmunologic contact urticaria and nonimmunologic immediate contact reactions, characterized by the appearance of wheals, erythema, and pruritus."[24]

### iii. Fragrance Is a Synthetic, Undisclosed Ingredient and a Recognized Contact Allergen

26.    Several of the Products—the Mint Chill, Odor Destroyer, Shea Butter, and Coffee (Morning Grind) variants (the "scented Products")—list "fragrance" as an ingredient.[25] The term "fragrance" as it appears on a cosmetic ingredient label is not a single substance. It is a legally sanctioned catch-all term that conceals a proprietary mixture of chemical compounds—potentially dozens, or even hundreds, of individual ingredients. Under federal law, manufacturers are not

---

[22] Lawrance NJ, et al., Sodium Benzoate as an Emerging but Problematic Allergen, Contact Dermatitis (2025), PMC12223916 (retrospective patch-test study of 3,198 patients; 1.8% allergic positive rate; 67% clinical relevance among positive reactors; concluding sodium benzoate is an "important allergen" warranting inclusion in bakery/cheilitis, fragrance, and facial patch-test series).

[23] Lahti A. Non-immunologic contact urticaria. Acta Derm Venereol Suppl (Stockh). 1980;60:1–49; see also Rietschel RL, Fowler JF. Fisher's Contact Dermatitis (6th ed. 2008) at 286–287.

[24] Cosmetic Ingredient Review, Final Report on the Safety Assessment of Benzyl Alcohol, Benzoic Acid, and Sodium Benzoate, 20 Int'l J. of Toxicology (2001) 23–50 (noting "clinical data indicated that these ingredients can produce nonimmunologic contact urticaria and nonimmunologic immediate contact reactions, characterized by the appearance of wheals, erythema, and pruritus").

[25] See DUDE Wipes product pages listing ingredients for the Mint Chill, Odor Destroyer, Shea Butter, and Coffee (Morning Grind) variants, https://dudewipes.com/products/dude-wipes; see also Target.com, DUDE Wipes Odor Destroyer Flushable Personal Wipes ingredient panel (listing "water, glycerin, cocamidopropyl pg-dimonium chloride phosphate, sodium benzoate, tocopheryl acetate, aloe barbadensis leaf extract, chamomilla recutita (matricaria) flower extract, fragrance, citric acid"; product also marketed as "Hypoallergenic" and "Made with 99% water and plant-based ingredients").

---

required to disclose the individual constituent chemicals within their fragrance formulations.[26] As a result, when a consumer reads the word "fragrance" on a personal care product label, the individual chemical composition of that fragrance—including whether its constituent chemicals are derived from synthetic, petrochemical, or plant sources—is not apparent.

27. The majority of commercially used fragrance ingredients are synthetic, not plant-derived. According to Breast Cancer Prevention Partners' ("BCPP") July 2025 report analyzing the International Fragrance Association's ("IFRA") Transparency List, "[m]ost of the compounds found in synthetic fragrances are derived from petroleum sources," while natural fragrances are "generally derived from plant-based raw materials such as essential oils, isolates, and extracts."[27] Under IFRA's own standards, a fragrance may be labeled "natural" only if it complies with the International Organization for Standardization's definition of natural aromatic raw materials—substances "physically obtained from plants using distillation, expression and extraction"—and synthetically reconstituted, nature-identical, or chemically modified materials cannot qualify as "natural."[28] A fragrance listed simply as "fragrance," with no qualification as "natural fragrance," may be synthetic, a blend of synthetic and natural materials, or "100% synthetic." Of the 3,619 total ingredients on the 2022 IFRA Transparency List, only 380 were identified as unique natural complex substances derived from plant materials after deduplication.

[26] FDA, Fragrances in Cosmetics, https://www.fda.gov/cosmetics/cosmetic-ingredients/fragrances-cosmetics ("under U.S. regulations, fragrance and flavor ingredients can be listed simply as 'Fragrance' or 'Flavor'"; "Fragrance and flavor formulas are complex mixtures of many different natural and synthetic chemical ingredients"); see 21 C.F.R. § 701.3(a) (cosmetic ingredients must be declared in descending order of predominance, "except that fragrance or flavor may be listed as fragrance or flavor").

[27] Breast Cancer Prevention Partners, Right to Know: Just How Hazardous are Fragrances? (July 2025), https://www.bcpp.org/wp-content/uploads/2025/07/bcpp-ifra-fragrance-report-final-2025.pdf ("[m]ost of the compounds found in synthetic fragrances are derived from petroleum sources"; natural fragrances "generally derived from plant-based raw materials such as essential oils, isolates, and extracts"; the 2022 IFRA Transparency List comprises 3,619 total ingredients, of which 380 were identified as unique natural complex substances after deduplication).

[28] Cosmetics & Toiletries, Comparatively Speaking: Natural vs. Synthetic Fragrance (Dec. 2011), https://www.cosmeticsandtoiletries.com/cosmetic-ingredients/sensory/article/21834851 (Under ISO 9235, as applied by IFRA, only aromatic raw materials "physically obtained from plants using distillation, expression and extraction" (or isolated from them by purely physical means) may be marketed as "natural."; "[a] fragrance may contain natural aromatics in combination with synthetics, or could be 100% synthetic").

28.     The synthetic origin of many undisclosed "fragrance" ingredients is confirmed by industry sources. Synthetic aromatic raw materials are "mostly from petroleum" or have "started as naturals and have had their chemical structure modified."[29] BCPP's 2018 testing of 140 personal care and cleaning products found 338 fragrance chemicals present, of which 99 were linked to chronic health concerns—with fragrance chemicals accounting for approximately 75% of the chemicals in those products linked to chronic health effects.[30] And as BCPP has noted, "[n]o federal law currently requires the disclosure of fragrance or flavor ingredients to consumers" as individual constituents.[31] A reasonable consumer reading a product described as "Plant Based" would not understand the term "fragrance" on the ingredient label to refer to a potentially petrochemical-derived synthetic mixture of undisclosed compounds.

29.     Fragrance is also among the most clinically significant contact allergens in personal care products. The American Academy of Dermatology identifies fragrance as one of the most common causes of allergic contact dermatitis, and fragrance is recognized in the dermatology literature as the most frequent cause of contact allergy to cosmetic products.[32] Fragrance allergies affect between 2% and 11% of the global population, translating to between 6.5 million and 35.8 million people in the United States alone.[33] The American Contact Dermatitis Society named

---

[29] Cosmetics & Toiletries, Comparatively Speaking: Natural vs. Synthetic Fragrance (Dec. 2011) ("[s]ynthetic aromatic raw materials have either been chemically created (mostly from petroleum), or started as naturals and have had their chemical structure modified").

[30] Breast Cancer Prevention Partners, Right to Know: Just How Hazardous are Fragrances? (July 2025) (BCPP's 2018 testing of 140 personal care and cleaning products found 338 fragrance chemicals, 99 of which were linked to chronic health concerns, comprising approximately 75% of the chronic-effect chemicals identified).

[31] Breast Cancer Prevention Partners, Summary of Cosmetic Hazardous Ingredient Right to Know Act of 2025 (July 2025), https://www.bcpp.org/wp-content/uploads/2025/07/2025-Fed-Cosmetic-Hazardous-Ingredient-R2K-Act.pdf ("No federal law currently requires the disclosure of fragrance or flavor ingredients to consumers").

[32] American Academy of Dermatology, Contact Dermatitis, https://www.aad.org/public/diseases/eczema/contact-dermatitis; see also Johansen JD, Fragrance contact allergy: a clinical review, Am. J. Clin. Dermatol. 2003;4(11):789–98; Cheng J, Zug K, Fragrance Allergic Contact Dermatitis, Dermatitis 2014;25(5):232–45 (fragrance is the most frequent cause of contact allergy to cosmetic products).

[33] Breast Cancer Prevention Partners, Right to Know: Just How Hazardous are Fragrances? (July 2025) (fragrance allergies affect between 2% and 11% of the global population, translating to between 6.5 million and 35.8 million people in the United States).

fragrance the "Allergen of the Year" in 2007,[34] and the FDA has acknowledged that "[s]ome components of fragrance formulas may have a potential to cause allergic reactions or sensitivities for some people."[35] The Modernization of Cosmetics Regulation Act of 2022 ("MoCRA") has since provided FDA with a specific statutory mandate to identify fragrance allergens and require their disclosure on cosmetic product labels—enacted in direct recognition of the allergen risk posed by undisclosed fragrance ingredients in personal care products.[36]

30.    A 2025 peer-reviewed study published in *Toxicological Research* confirmed that while essential oils consist of approximately 50–500 naturally occurring compounds, "synthetic scents may comprise more than 3,000 distinct chemical compounds"—making the single label "fragrance" on a Product claiming to be "Hypoallergenic" and "Plant Based" materially misleading to reasonable consumers.[37]

31.    Fragrance serves no functional or therapeutic purpose in a flushable wipe, it is included purely for sensory appeal. Indeed, Defendant itself sells a "Fragrance Free" variant of the Products, demonstrating both that fragrance is unnecessary to the Products' function and that Defendant is aware fragrance presents an allergen concern.

### iv. *Chamomilla Recutita (Matricaria) Flower Extract Functions as a Fragrance and Is a Recognized Contact Allergen*

32.    Each of the scented Products and the Fragrance Free Product contains Chamomilla Recutita (Matricaria) Flower Extract—German chamomile flower extract. On the scented Products,

[34] American Contact Dermatitis Society, Allergen of the Year 2007: Fragrance; see also Jacob SE, Castanedo-Tardan MP, A review of the U.S. standard patch test series 2007, Pediatr. Ann. 2008;37(2):102–103.

[35] FDA, Fragrances in Cosmetics, https://www.fda.gov/cosmetics/cosmetic-ingredients/fragrances-cosmetics ("Some components of fragrance formulas may have a potential to cause allergic reactions or sensitivities for some people").

[36] 21 U.S.C. § 364e(b) (FDCA § 609(b), as added by MoCRA) (requiring the responsible person to identify on a cosmetic product label each fragrance allergen included in such cosmetic product, as defined by FDA rulemaking); see also FDA Unified Regulatory Agenda, Disclosure of Fragrance Allergens in Cosmetic Labeling, RIN 0910-AI90.

[37] Rana P, et al., Regulatory frameworks for fragrance safety in cosmetics: a global overview, 41(3) Toxicol. Res. 199–220 (2025), PMC12021755 ("EOs consist of around 50–500 naturally occurring compounds that are found in a plant whereas synthetic scents may comprise more than 3,000 distinct chemical compounds").

Chamomilla Recutita (Matricaria) Flower Extract is listed ahead of the named botanical oils to which Defendant attributes each Product's scent; on the Mint Chill variant, for example, chamomile is listed seventh, while the named Mentha Arvensis (mint) and Eucalyptus Globulus (eucalyptus) oils are listed tenth, eleventh, and twelfth—behind not only Chamomilla Recutita (Matricaria) Flower Extract but the undisclosed "Fragrance" and citric acid as well. The Fragrance Free Product, which Defendant markets as containing no fragrance, also lists Chamomilla Recutita (Matricaria) Flower Extract among its ingredients.

33. Chamomilla Recutita (Matricaria) Flower Extract contains a volatile oil whose principal constituents—$(-)$-$\alpha$-bisabolol and its oxides and chamazulene, together with related sesquiterpenes—are responsible for chamomile's characteristic sweet, herbaceous aroma. COSMILE Europe classifies Chamomilla Recutita Flower Extract as a "Fragrance" ingredient and identifies its preparation type as "Extract (solvent extract)."[38] Commercial cosmetic-grade chamomile flower extracts are standardly prepared in solvent bases—including propylene glycol, glycerin, and butylene glycol—specifically to preserve and deliver the bioactive terpenoids bisabolol, bisabolol oxides A and B, and chamazulene that give chamomile its characteristic herbaceous aroma.[39] The Good Scents Company, an authoritative industry fragrance-and-flavor database, describes chamomile extract (CAS 84082-60-0) as having a "herbal type odor" and lists

---

[38] COSMILE Europe, Chamomilla Recutita Flower Extract (functions "FRAGRANCE: Enhances the smell of a product and/or perfumes the skin" and "SKIN CONDITIONING"; preparation type "Extract (solvent extract)"), https://cosmileeurope.eu/inci/detail/3041/chamomilla-recutita-flower-extract.

[39] Nature In Bottle, Chamomile Extract—Matricaria recutita (describing commercial cosmetic chamomile extracts as prepared via solvent-based systems including propylene glycol, glycerin, butylene glycol, and water "customized to fit individual requirements," and noting the extract "acts as a fragranced ingredient with masking properties"), https://www.natureinbottle.com/product/chamomile_extract; UL Prospector, Chamomile Extract (listing commercial cosmetic-grade chamomile extract as containing "bisabolol, bisabolol oxides A and B, and matricin" in a glycerin and water carrier), https://www.ulprospector.com/en/na/PersonalCare/Detail/34148/1013931/Chamomile-Extract; *see also* Srivastava J.K., et al., Extraction, Characterization, Stability and Biological Activity of Flavonoids Isolated from Chamomile Flowers, 1 Molecular & Cellular Pharmacology 138, 138–39 (2009), https://pmc.ncbi.nlm.nih.gov/articles/PMC2809371/ (bisabolol, bisabolol oxides, and chamazulene are the principal aromatic volatile constituents of the chamomile flower and are recovered in solvent-based extracts).

---

its functional use as a cosmetic fragrance and flavor agent.[40] Consistent with this classification, chamomile extracts are among the most prevalent botanical allergens in wet wipes specifically: a peer-reviewed survey of 178 facial wet wipes found chamomile extracts present in 27.0% of products examined, the second-highest rate of any botanical, and classified them as potential allergens of botanical origin alongside "fragrance" as a separate category—confirming that industry formulation practice treats chamomile extract as a distinct scent-contributing botanical ingredient rather than an inert additive.[41]

34.    Chamomile flower extract functions as a fragrance. The Cosmetic Ingredient Review Expert Panel, in its amended safety assessment of chamomile-derived ingredients, states that "[t]he Chamomilla recutita-derived ingredients in this assessment are reported to function mostly as fragrance ingredients and skin conditioning agents in cosmetic products," and the Panel's ingredient-function table lists Chamomilla Recutita (Matricaria) Flower Extract [CAS No. 84082-60-0] among the ingredients whose designated functions include "fragrance ingredients."[42] This characterization reflects data reported by cosmetic manufacturers to the FDA's Voluntary Cosmetic Registration Program identifying how chamomile-derived ingredients are actually used

---

[40] The Good Scents Company, Matricaria chamomilla Flower Extract (CAS 84082-60-0) (listing functional use as "cosmetic, flavor and fragrance agents" and describing "herbal type odor"), https://www.thegoodscentscompany.com/data/ex1547201.html.

[41] Aschenbeck K.A. & Warshaw E.M., Allergenic Ingredients in Facial Wet Wipes, 78 Dermatitis 45 (2017), https://pubmed.ncbi.nlm.nih.gov/28338538/ (in survey of 178 facial wet wipes, chamomile extracts present in 27.0% of products, the second-highest rate among botanicals examined; classified as "potential allergens of botanical origin" separately from the ingredient category "fragrance," which was present in 63.5% of products—establishing that chamomile extract contributes to a wipe's olfactory and sensitization profile independently of any listed "Fragrance" component).

[42] Johnson W., et al., Amended Safety Assessment of Chamomilla recutita-Derived Ingredients as Used in Cosmetics, 37 Int'l J. Toxicology (Supp. 3) 51S, 51S (2018), https://journals.sagepub.com/doi/10.1177/1091581818801814 (chamomile-derived ingredients "reported to function mostly as fragrance ingredients and skin conditioning agents in cosmetic products"); CIR ingredient-function table listing "Chamomilla Recutita (Matricaria) Flower Extract [84082-60-0]" with designated functions including "Fragrance ingredients; skin-conditioning agents-miscellaneous; skin-conditioning agents-occlusive," https://www.cir-safety.org/sites/default/files/chamomilla%20recutita.pdf. The CIR's "reported to function" language reflects use data submitted by manufacturers to the FDA's Voluntary Cosmetic Registration Program (VCRP), which compiles how ingredients are actually used in marketed products; it represents a record of industry commercial practice, not a hedged opinion as to the ingredient's chemistry

---

in the industry—not a theoretical classification, but a record of commercial practice. European cosmetic ingredient databases classify it the same way: COSMILE Europe lists the cosmetic functions of Chamomilla Recutita Flower Extract as "Fragrance"—defined as "enhanc[ing] the smell of a product and/or perfum[ing] the skin"—and "Skin Conditioning," and databases drawn from the EU's CosIng nomenclature list its functions as "masking" and "skin conditioning," where "masking" denotes an ingredient used to reduce or inhibit a product's basic smell—a function that itself presupposes that the ingredient interacts with and contributes to the product's olfactory profile, whether by adding, modifying, or suppressing scent.[43] Under either the COSMILE "Fragrance" designation or the CosIng "masking" designation, chamomile flower extract is not an olfactorily inert ingredient. The Cosmetic Ingredient Review is an industry-funded safety-review body rather than a regulatory authority, and the FDA may consider, but does not adopt, its assessments.[44]

35.    Chamomile is also a recognized contact sensitizer. German chamomile belongs to the Compositae (Asteraceae) plant family, which the dermatological literature identifies as an important cause of allergic plant contact dermatitis, with sesquiterpene lactones as the principal sensitizing agents.[45] German chamomile extract is a named component of the Compositae Mix II patch-test panel used in clinical practice to diagnose allergic contact dermatitis, and clinical

---

[43] INCIDecoder, Chamomilla Recutita Flower Extract (CosIng-derived functions "masking, skin conditioning"), https://incidecoder.com/ingredients/chamomilla-recutita-flower-extract. Under EU cosmetic ingredient classification, "masking" is defined as reducing or inhibiting the basic smell or taste of the product. COSMILE Europe is operated by Cosmetics Europe and is distinct from the European Commission's official CosIng database, which the Commission describes as having "informative purpose and no legal value." An ingredient with a "masking" function is one whose olfactory activity is sufficient to modify a product's scent; it cannot be olfactorily inert.

[44]  The CIR Expert Panel was established in 1976 by what is now the Personal Care Products Council, with FDA and the Consumer Federation of America as non-voting liaisons; it is an independent nonprofit safety-review body, not a regulatory authority. The FDA "may consider" CIR reviews but "does not vote" and "may agree or disagree" with its conclusions. See FDA, Product Testing of Cosmetics, https://www.fda.gov/cosmetics/cosmetics-science-research/product-testing-cosmetics; CIR, About CIR, https://www.cir-safety.org/about.

[45] Evy Paulsen, Contact sensitization from Compositae-containing herbal remedies and cosmetics, 47 Contact Dermatitis 189, 189 (2002) ("The Compositae (Asteraceae) family of plants is currently an important cause of allergic plant contact dermatitis in Europe"), https://pubmed.ncbi.nlm.nih.gov/12492516/; DermNet NZ, Compositae Allergy (identifying sesquiterpene lactones as the most important allergens in Compositae plants), https://dermnetnz.org/topics/compositae-allergy.

---

guidance advises patients who test positive for Compositae allergy to avoid personal-care products that list German chamomile among their ingredients.[46] More than one-third of patients with Compositae allergy also have an allergy to fragrances, balsam of Peru, and rosin—all substances of plant origin that are chemically related to Compositae allergens—meaning that the consumer population sensitized to chamomile substantially overlaps with the population sensitized to botanical fragrances and their chemical relatives.[47] Consumers who seek out "hypoallergenic" and "fragrance-free" products are disproportionately drawn from this sensitized population and rely on such labeling specifically to avoid the contact dermatitis triggered by fragrance-related botanical compounds. In a peer-reviewed study, 8 of 12 chamomile-sensitive patients tested positive to products containing chamomile, and the authors concluded that "Compositae-allergic persons should be warned against topical use of Compositae-containing products."[48] The Cosmetic Ingredient Review Expert Panel has concluded that Chamomilla recutita-derived ingredients are safe in cosmetics only "when formulated to be nonsensitizing," and has specifically identified

[46] European Society of Contact Dermatitis, Patient Information Leaflet: Compositae Mix II, https://escd.org/wp-content/uploads/Compositae-mix-II.pdf (listing Chamomilla recutita (German chamomile) extract as a component of Compositae Mix II); Chemotechnique Diagnostics, Compositae Mix II (mix includes Chamomilla Recutita, used "for the detection of compositae allergy"), https://www.chemotechnique.se/products/mixes/compositae-mix-ii-557923975/; Contact Dermatitis Institute, Compositae Mix Patient Information (advising patients who test positive to avoid products listing "German chamomile," "Matricaria chamomilla L.," or "German chamomile extract"), https://www.contactdermatitisinstitute.com/pdfs/allergens/Compositae%20mix.pdf.

[47] DermNet NZ, Compositae Allergy ("more than one-third of patients with Compositae allergy also have allergy to fragrances, balsam of Peru and rosin (colophony). These are also of plant origin and contain several of the same chemical groups as Compositae plants"), https://dermnetnz.org/topics/compositae-allergy. Balsam of Peru is itself a well-characterized botanical fragrance-related allergen: a positive patch test to balsam of Peru is seen in approximately 50% of fragrance allergy cases. *See* DermNet NZ, Balsam of Peru Contact Allergy, https://dermnetnz.org/topics/balsam-of-peru-allergy. The co-reactivity between Compositae sensitization and fragrance/balsam-of-Peru/rosin sensitization thus reflects a shared chemical basis among plant-origin compounds, not incidental association, and further confirms that the population sensitized to chamomile substantially overlaps with the population that seeks fragrance-free products.

[48] Paulsen E., Christensen L.P. & Andersen K.E., Cosmetics and herbal remedies with Compositae plant extracts — are they tolerated by Compositae-allergic patients?, 58 Contact Dermatitis 15, 15–16 (2008) (8 of 12 chamomile-sensitive patients tested positive to chamomile-containing products; "Compositae-allergic persons should be warned against topical use of Compositae-containing products"), https://pubmed.ncbi.nlm.nih.gov/18154553/.

anthecotulide—a sesquiterpene lactone present in chamomile sourced from Argentina—as a strongly allergenic constituent of concern that formulators should avoid.[49]

36.    These two bodies of evidence—chamomile's regulatory classification as a fragrance ingredient and its clinical identification as a Compositae sensitizer—are mutually reinforcing, not alternative theories of liability. Chamomile flower extract is simultaneously classified as a fragrance by the CIR and COSMILE Europe and documented as an allergen in the fragrance-sensitive population. The consumers most harmed by Defendant's "Fragrance Free" representation are precisely those who are both fragrance-allergic and chamomile-sensitized, or who are at elevated risk of developing both sensitivities through the documented pattern of co-reactivity between Compositae allergens and botanical fragrance-related compounds. A "Fragrance Free" label on a product containing an ingredient classified as a fragrance by industry regulatory bodies, and that sensitizes the same population who relies on "fragrance-free" labeling, is materially misleading to the reasonable consumer in that target class regardless of whether chamomile appears on the ingredient declaration under the generic INCI term "Fragrance."[50]

### v.    Citric Acid Is a Synthetic Ingredient

37.    Although citric acid occurs naturally in citrus fruits, the citric acid used in mass-produced consumer goods like the Products is not extracted from fruit. It is an industrially manufactured commodity that a mold produces through large-scale fermentation. The U.S. Environmental Protection Agency confirms that commercial citric acid "is produced almost exclusively through microbial processes, utilizing a substrate and strain of mold or yeast," after

[49] Johnson W., et al., Amended Safety Assessment of Chamomilla recutita-Derived Ingredients as Used in Cosmetics, 37 Int'l J. Toxicology (Supp. 3) 51S, 64S–65S (2018) (Chamomilla recutita-derived ingredients safe in cosmetics "when formulated to be nonsensitizing"; identifying anthecotulide—present at problematic levels specifically in chamomile sourced from Argentina—as a strongly allergenic sesquiterpene lactone constituent of concern that formulators should avoid), https://journals.sagepub.com/doi/10.1177/1091581818801814.

[50] See FDA, Allergens in Cosmetics, https://www.fda.gov/cosmetics/cosmetic-ingredients/allergens-cosmetics (FDA has not defined "fragrance free" by regulation and notes that botanicals may function as fragrance allergens); Katta R., supra note 1 (fragrance-free products may contain botanical fragrance compounds capable of causing allergic reactions in fragrance-sensitive individuals). See also CIR, Amended Safety Assessment, supra note 13, at 51S (chamomile-derived ingredients classified as fragrance ingredients in commercial use); COSMILE Europe, supra note 6 (chamomile flower extract classified as "Fragrance" under EU INCI nomenclature).

which manufacturers recover and refine it through industrial chemical processing.[51] Peer-reviewed literature confirms that more than ninety percent of the world's citric acid is produced through fermentation that predominantly uses the fungus *Aspergillus niger*.[52] The FDA recognizes a solvent-extraction process for recovering citric acid from *Aspergillus niger* fermentation liquor in which "the solvent used in the process consists of a mixture of n-octyl alcohol … synthetic isoparaffinic petroleum hydrocarbons … and tridodecyl amine." 21 C.F.R. § 173.280. Solvent extraction using chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons is, accordingly, among the FDA-recognized industrial methods by which commercial citric acid of the kind used in the Products is recovered from *Aspergillus niger* fermentation liquor. Because fruit-extracted citric acid is not produced at commercial scale, the citric acid in Defendant's Products, like the overwhelming majority of commercial citric acid, is the output of *Aspergillus niger* fermentation and industrial chemical recovery rather than anything extracted from a plant. *Aspergillus niger* is a mold, not a plant. The finished ingredient is neither a plant nor a material drawn from one; it is a fungal-fermentation product isolated through industrial chemistry, and the plant origin of the sugars fed to that fermentation does not change what the consumer receives. No reasonable consumer would understand an industrially manufactured *Aspergillus niger* fermentation commodity, recovered through solvent extraction using n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons, to be a "plant-based ingredient."

38. Citric acid is also a functional preservation ingredient in cosmetic and personal care products. Industry authorities confirm that "[c]itric acid and its diammonium, potassium and sodium citrate salts are used to help preserve cosmetics and personal care products by chelating

---

[51] Env't Protection Agency, Citric Acid Supply Chain — Full Profile, available at https://www.epa.gov/system/files/documents/2023-03/Citric%20Acid%20Supply%20Chain%20Profile.pdf (describing manufactured citric acid as "one of the most common additives in food and beverage products across the world"; confirming citric acid is produced "almost exclusively through microbial processes, utilizing a substrate and strain of mold or yeast").

[52] Ewelina Książek et al., Citric Acid: Properties, Microbial Production, and Applications in Industries, 29(1) Molecules (Jan. 2024), PMC10779990.

metals that can lead to their deterioration."[53] Peer-reviewed research confirms that citric acid has been used as an "antimicrobial preservative by replacing conventional preservatives" and that, as a chelating agent, it "increases the permeability of cell membranes, makes them more sensitive to antimicrobial agents and blocks the iron required for metabolism and microbial growth."[54] Citric acid is included in the Products as a manufactured functional additive—a preservative and chelating agent—not as a plant-derived material, which reinforces that no reasonable consumer would understand it to be a "plant-based ingredient."

### D.    Defendant's Representations Are False and Misleading

39.    By the acts and conduct alleged herein, Defendant represents that the Products: (1) are made with "99% Water & Plant Based Ingredients" and are "Plant Based"; (2) are "Hypoallergenic," "Dermatologist Tested," "Sensitive," and "Safe on Sensitive Skin"; (3) are scented by the named botanicals identified on their front labels; and (4) are "Fragrance Free" and "Unscented." Each Representation is false or materially misleading.

### i.    The Plant Based Representations.

40.    The "99% Water & Plant Based Ingredients" representation indicates that the Products are comprised of 99% water, with the remaining 1% consisting of plant based ingredients. That, however, is false because the Products contain multiple synthetic ingredients—cocamidopropyl PG-dimonium chloride phosphate, sodium benzoate, citric acid, and, in the scented Products, fragrance. Defendant compounds the misrepresentation by counting industrially synthesized ingredients as plant-based because their precursors derive from plant origins, even though the finished compounds do not remotely resemble anything occurring in nature. A reasonable consumer does not understand "plant-based" to include a synthetic ingredient simply because its raw materials began in a plant.

---

[53] Citric Acid-Derived Ingredients, Cosmetics Info (Personal Care Products Council), available at https://www.cosmeticsinfo.org/ingredient/citric-acid/.

[54] Halla N, Fernandes IP, Heleno SA, et al. Cosmetics Preservation: A Review on Present Strategies. Molecules. 2018;23(7):1571. https://doi.org/10.3390/molecules23071571 (PMC6099538).

## ii. The Hypoallergenic Representations.

41.    The term "hypoallergenic" communicates to a reasonable consumer that a product is specifically formulated to reduce the likelihood of allergic reactions. Merriam-Webster defines "hypoallergenic" as "having little likelihood of causing an allergic reaction," while Dictionary.com defines the term as "designed to reduce or minimize the possibility of an allergic response." That expectation is reinforced by the other skin-safety claims Defendant places alongside "Hypoallergenic"—"Dermatologist Tested," "Sensitive," and "Safe on Sensitive Skin"—which a reasonable consumer reads together as a single assurance that the Products are gentle and formulated to reduce the likelihood of allergic reactions. The Products are not so formulated. They contain three recognized contact allergens: sodium benzoate, present in every variant; fragrance, present in the scented Products; and chamomile. Each is a documented cause of allergic or allergy-like cutaneous reactions, and the consumers most likely to be sensitized to chamomile and fragrance are the very consumers who seek out hypoallergenic products. A Product that contains ingredients specifically incorporated into clinical allergen patch-test panels is not, within any reasonable understanding of the term, formulated to minimize the risk of allergic reactions.

## iii. The Scented Representations.

42.    Defendant markets five Products by the scent each imparts and attributes that scent, on the front of the package, to specific named botanicals: "With Mint & Eucalyptus Oils" (Mint Chill); "Light Scents Of Citrus And Sea Salt" (Odor Destroyer); "Shea Butter And Coconut Scented" (Shea Butter); "Infused With Coffee" (Coffee); and "Witch Hazel And Essential Geranium Oil" (Herbal Relief). By naming specific botanicals as the source of each Product's scent, Defendant conveys to a reasonable consumer that the scent derives predominantly, if not exclusively, from those named ingredients. It does not. Because Defendant lists its ingredients in descending order of predominance, the placement of the named oils at or near the end of each ingredient list reflects that they are present in only *de minimis* amounts. On the Mint Chill, Odor Destroyer, Shea Butter, and Coffee Products, "Fragrance" and "Chamomilla Recutita (Matricaria) Flower Extract" are listed ahead of the front label scents. Similarly, the Herbal Relief variant  lists "Chamomilla Recutita (Matricaria) Flower Extract" ahead of the named witch hazel and geranium

oils. The Odor Destroyer goes a step further: its front label promises "Light Scents Of Citrus And Sea Salt," yet the Product contains no citrus or sea salt ingredients at all. The source of a Product's scent is material to reasonable consumers, that is why Defendant lists it at the front and center of each Product. Consumers are drawn to the Products because they believe they are scented by natural mint, eucalyptus, shea butter, coconut, coffee, witch hazel, or geranium—not generic chamomile or synthetic fragrances.

### iv.    The Fragrance Free Representations.

43.    Defendant markets and sells the Fragrance Free variant as "Fragrance Free" and "Unscented." A reasonable consumer understands "Fragrance Free" and "Unscented" to mean that the Product does not contain ingredients that function as fragrances, and consumers who select such products commonly do so because of fragrance sensitivities, allergies, or a desire to avoid fragrance-related exposure. The Fragrance Free variant, however, contains "Chamomilla Recutita (Matricaria) Flower Extract," an ingredient that is documented to function as a fragrance by the cosmetic industry's safety panel and the EU ingredient databases, as described *supra*.

### v.    The ingredient list does not cure the deception.

44.    A reasonable consumer is not expected to study the back-panel ingredient list, parse its order of predominance, or possess the specialized knowledge to determine which listed ingredients are synthetic, which are recognized contact allergens, or which supply the Products' scent. The list does not clearly identify the naturalness, safety, or function of these ingredients, and a reasonable consumer is not positioned to make those determinations at the point of sale. The foregoing deceptive acts and practices were directed at consumers and are misleading in a material way.

### E.    Defendant's Labeling Violates Federal and California Cosmetic Labeling Law

45.    The federal Food, Drug, and Cosmetic Act ("FDCA") deems a cosmetic misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 362(a). The FDA recognizes that a cosmetic's labeling is misleading when it credits some but not all of the ingredients responsible for a represented characteristic: "The labeling of a cosmetic which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such

cosmetic in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling." 21 C.F.R. § 701.1(b).

46. FDA regulations further require that a cosmetic declare its ingredients "in descending order of predominance." 21 C.F.R. § 701.3(a). The order in which the Products list their ingredients reflects the relative predominance of each ingredient by weight.

47. On the four scented Products that list an undisclosed "Fragrance"—Mint Chill, Odor Destroyer, Shea Butter, and Coffee—Defendant's front labels attribute each Product's scent to specific named botanicals, yet the ingredient lists place that undisclosed "Fragrance" and "Chamomilla Recutita (Matricaria) Flower Extract"—each a scent-contributing ingredient—ahead of the named botanicals, which appear at or near the end of each ingredient list. Because Defendant must list ingredients in descending order of predominance, the placement of the named botanicals at or near the end of the list reflects that they are present in only *de minimis* amounts, while the undisclosed Fragrance and chamomile, listed ahead of them, are more predominant. On the Herbal Relief variant, "Chamomilla Recutita (Matricaria) Flower Extract" is likewise listed ahead of the named witch hazel and geranium oils. The labeling thus designates the Products by a name that suggests one or more but not all of the ingredients responsible for the scent, in the manner 21 C.F.R. § 701.1(b) identifies as misleading.

48. Defendant's representation that the Products are made with "99% Water & Plant Based Ingredients" is misleading under the same framework. On every variant, the synthetic, non-plant-based ingredients—cocamidopropyl PG-dimonium chloride phosphate, sodium benzoate, fragrance and citric acid—are listed ahead of the plant-based ingredients, reflecting that the Products' predominant constituents after water and glycerin are synthetic rather than plant-based.

49. Plaintiffs' state-law claims are independently grounded in California's Sherman Food, Drug, and Cosmetic Law and the Unfair Competition Law, which parallel but do not depend on the FDCA. The FDCA provisions alleged above are offered as evidence of Defendant's conduct and as predicate unlawful acts supporting the UCL's unlawful prong—not as the sole basis for any state-law claim. Plaintiffs' claims would exist under the Sherman Law and the UCL regardless of

the FDCA, because California's cosmetic misbranding and false-advertising statutes impose obligations coextensive with, but independent from, those the FDCA imposes.

50.    Defendant's marketing, advertising, and sale of the Products violate the misbranding provisions of the Sherman Law applicable to cosmetics (Cal. Health & Safety Code § 111730, *et seq.*), including but not limited to:

(a) Section 111730 (a cosmetic is misbranded if its labeling is false or misleading in any particular), in that the Products' labels represent that the Products are "99% Water & Plant Based Ingredients" and that their scent derives from named botanicals, when the Products' predominant non-water ingredients are synthetic and their scent derives predominantly from an undisclosed Fragrance;

(b) Section 111735 (a cosmetic is misbranded if its labeling or packaging does not conform to the requirements of Chapter 4), in that the Products' labeling fails to conform to Chapter 4's prohibition on false and misleading advertising at Section 110390;

(c) Section 111745 (a cosmetic is misbranded if any word, statement, or other information required to appear on the label or labeling is not prominently placed with such conspicuousness as to render it likely to be read by the ordinary consumer), in that the front labels prominently feature the plant-based and named-botanical scent claims while the information contradicting them appears only in the back-panel ingredient list;

(d) Section 111765 (it is unlawful for any person to manufacture or sell any cosmetic that is misbranded), in that Defendant has manufactured and sold the Products bearing the false and misleading label claims described herein; and

(e) Section 111770 (it is unlawful for any person to misbrand any cosmetic), in that Defendant has misbranded the Products by affixing the false and misleading label claims described herein.

51.    Defendant's marketing, advertising, and sale of the Products also violate the false-advertising provisions of the Sherman Law (Cal. Health & Safety Code § 110390, *et seq.*), including but not limited to:

(a) Section 110390 (it is unlawful for any person to disseminate any false advertisement of any cosmetic), in that Defendant disseminated false and misleading advertising through the Products' Amazon listings, product titles, and labels, representing that the Products are plant-based and that their scent derives from named botanicals;

(b) Section 110395 (it is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any cosmetic that is falsely advertised), in that Defendant manufactured, sold, delivered, held, and offered the Products for sale through Amazon and retail channels after disseminating the false advertising described herein; and

(c) Sections 110398 and 110400 (it is unlawful for any person to advertise any cosmetic that is adulterated or misbranded, and unlawful to receive in commerce any falsely advertised cosmetic or to deliver or proffer for delivery any such cosmetic), in that Defendant has advertised and continues to advertise the misbranded Products and has delivered and continues to proffer for delivery the falsely advertised Products to consumers.

**F.    RULE 9(b) Allegations**

52.    **(a) WHO:** Defendant Dude Products, Inc.

53.    **(b) WHAT:** Defendant's conduct was, and continues to be, false, deceptive, and misleading because Defendant affirmatively represented that the Products (i) are made with "99% Water & Plant Based Ingredients" and are "Plant Based"; (ii) are "Hypoallergenic," "Dermatologist Tested," "Sensitive," and "Safe on Sensitive Skin"; (iii) as to the scented Products, are scented by the specific botanicals named on their front labels; and (iv) as to the Fragrance Free variant, are "Fragrance Free" and "Unscented"—while omitting and concealing that the Products (i) contain multiple synthetic ingredients; (ii) contain recognized contact allergens (sodium benzoate, fragrance, and chamomilla recutita (matricaria) flower extract; (iii) that the scented Products' scent derives predominantly from fragrance and chamomilla recutita (matricaria) flower extract rather than from the named botanicals; and (iv) that the Fragrance Free variant contains chamomilla recutita (matricaria) flower extract, an ingredient that functions as a fragrance. These representations and omissions were material to Plaintiffs and the Classes.

54.     **(c) WHEN:** Defendant made these material misrepresentations and omissions to Plaintiffs and the members of the Classes throughout the Class Period, including immediately prior to and at the time of their purchases of the Products.

55.     **(d) WHERE:** On the Products' labels and packaging and in Defendant's online marketing, including its Amazon.com product listings (encompassing the product titles, carousel images and claim badges, the "Top Highlights," "Features & Specs," and "About this item" sections, and the "A+" product-description panels).

56.     **(e) HOW:** By prominently making the Representations on the Products' packaging and throughout its online marketing.

57.     **(f) INJURY:** Plaintiffs and the members of the Classes purchased, and paid a premium for, the Products that they would not have purchased—or for which they would have paid substantially less—absent Defendant's misrepresentations and omissions.

**G.     Plaintiffs Lack an Adequate Remedy at Law**

58.     Plaintiffs lack an adequate remedy at law for the future harm described above. Damages cannot remedy Plaintiffs' inability to rely on Defendant's Representations when deciding whether to purchase the Products in the future, and only injunctive relief requiring Defendant to cease the misleading Representations or reformulate the Products can address that prospective harm.

59.     Equitable relief is also necessary because legal remedies may prove inadequate to provide complete relief, including restitution measured by the difference between the price Plaintiffs and the Class paid and the value of the Products as received, and disgorgement of the revenues Defendant unfairly obtained, which are equitable remedies not necessarily coextensive with damages.

60.     Equitable relief is also appropriate because the statutes of limitations for the causes of action pled herein vary. The UCL and FAL's statute of limitations are four years — one year longer than the CLRA's statute of limitations. Thus, class members who purchased the Products more than three years before the filing of the complaint would be barred from recovery if equitable relief were not permitted under the UCL and FAL.

61. The scope of actionable misconduct under the FAL and UCL is also broader than under the other causes of action asserted herein. The FAL and UCL prohibit Defendant's fraudulent marketing scheme. Plaintiffs' warranty and common-law claims, on the other hand, are more limited, focusing on the specific duties and obligations arising from Defendant's misrepresentations and omissions at the point of purchase. The UCL also creates a cause of action for violations of laws that do not themselves provide for a private cause of action — including the FTC's prohibition on unfair and deceptive acts in the labeling of consumer products.

<strong><u>CLASS ALLEGATIONS</u></strong>

62. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3). The proposed classes are defined as (collectively, the "Classes"):

*Nationwide Class*: All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.

*California Subclass*: All persons in California who, during the maximum period of time permitted by the law, purchased Defendant's Products for their personal use.

*Multi-State Consumer Protection Subclass*: All persons who, during the maximum period of time permitted by law, purchased Defendant's Products in the states enumerated in Count IV below.

*Multi-State Warranty Subclass*: All persons who, during the maximum period of time permitted by law, purchased Defendant's Products in the states enumerated in Count V below.

63. The Classes do not include (1) Defendant, its officers, and/or directors; (2) the Judge and/or Magistrate to whom this case is assigned; (3) the Judge or Magistrate's staff and family; and (4) Plaintiffs' counsel and Defendant's counsel.

64. Plaintiffs reserve the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

65. *Numerosity*: While the exact number of members of the Classes is unknown to Plaintiffs at this time, and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions.

66. ***Existence and Predominance of Common Questions of Law and Fact***: Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes. These common questions include, but are not limited to:

(a) Whether the Products' Representations concerning their plant-based composition, hypoallergenic properties, the source of the Products' scent, and the absence of fragrance are false and misleading;

(b) Whether Defendant's Representations were material;

(c) Whether the Products contain synthetic, non-plant-based ingredients;

(d) Whether the Products contain recognized contact allergens—including sodium benzoate, fragrance, and chamomile—inconsistent with a "Hypoallergenic" claim;

(e) Whether the scented Products' scent derives predominantly from an undisclosed fragrance and chamomile rather than from the named botanicals, and whether the Fragrance Free Product contains an ingredient that functions as a fragrance;

(f) Whether Defendant was unjustly enriched as a result of its unlawful conduct;

(g) Whether Plaintiffs and the Classes have suffered damages and the amount thereof.

67. ***Typicality***: The claims of the named Plaintiffs are typical of the claims of other members of the Classes in that the named Plaintiffs were exposed to Defendant's false and misleading Representations about the Products' plant-based composition, hypoallergenic properties, scent source, and fragrance-free character, purchased the Products in reliance on those Representations, and suffered a loss as a result.

68. ***Adequacy***: Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have no interests adverse to the interests of the members of the Classes and are committed to the vigorous prosecution of this action, and, to that end, have retained skilled and experienced counsel.

69. ***Superiority***: A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                    36

23(b)(3) because the expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek redress other than through the procedure of a class action.

## CAUSES OF ACTION

### COUNT I
**Violation of California's Consumers Legal Remedies Act**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf of the California Subclass)**

70.    Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

71.    Plaintiffs bring this claim on behalf of themselves and the California Subclass against Defendant.

72.    Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."

73.    Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

74.    Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

75.    Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers by making the Representations even though (1) the Products contain synthetic, non-plant-based ingredients; (2) the Products contain recognized contact allergens—sodium benzoate, fragrance, and chamomile—inconsistent with the Hypoallergenic Representations; (3) the scented Products' scent derives predominantly from an undisclosed fragrance and chamomile rather than from the named botanicals; and (4) the Fragrance Free Product contains chamomile, an ingredient that functions as a fragrance, notwithstanding its "Fragrance Free" and "Unscented" labeling.

76.    Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

77.     On May 18, 2026, Plaintiff Roman, and on June 2, 2026, Plaintiff Dawe, sent Defendant pre-suit notice letters pursuant to Cal. Civ. Code § 1782. The letters were sent by certified mail, return receipt requested, provided notice of Defendant's violations of the CLRA, Cal. Civ. Code § 1750, *et seq.,* the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, et seq., and Cal. Com. Code §§ 2313–2314, and demanded that Defendant correct the unlawful, unfair, false, and deceptive practices alleged herein. Defendant failed to correct its business practices or provide the requested relief within 30 days. The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated." Accordingly, Plaintiffs seek, in addition to injunctive relief, monetary damages from Defendant, reasonable attorneys' fees and litigation costs, and any other relief the Court deems proper under the CLRA.

## COUNT II
### Violation of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (On Behalf of the California Subclass)

78.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this Complaint.

79.     Plaintiffs bring this claim individually and on behalf of the members of the California Subclass against Defendant.

80.     Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210, *et seq*, by engaging in unfair, fraudulent, and unlawful business practices.

81.     The UCL prohibits unfair competition, defined to include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action

on behalf of herself or others similarly situated who are affected by the unlawful and/or unfair business practice or act.

82.    Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code §§ 17200, *et seq.*

83.    Defendant violated the UCL's proscription against engaging in unlawful business practices through its violations of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.*; the CLRA, Cal. Civ. Code § 1770, *et seq.*; the Sherman Food, Drug, and Cosmetic Law, including without limitation Cal. Health & Safety Code §§ 110390, 110395, 110398, 110400, 111730, 111735, 111745, 111765, and 111770; and federal laws regulating the advertising and labeling of cosmetics, including 21 U.S.C. § 362 and 21 C.F.R. §§ 701.1 and 701.3, and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce, including as applied to environmental marketing claims through the FTC's Guides for the Use of Environmental Marketing Claims, 16 C.F.R. Part 260.

84.    Defendant has also violated the UCL's proscription against engaging in fraudulent business practices by making the Plant Based Representations, the Hypoallergenic Representations, the Scented Representations, and the Fragrance Free Representations.

85.    Despite those Representations, however, the Products: (1) contain multiple synthetic, non-plant-based ingredients—including citric acid, sodium benzoate, cocamidopropyl PG-dimonium chloride phosphate, and, in the scented Products, fragrance—that contradict the Plant Based Representations; (2) contain recognized contact allergens—sodium benzoate in every variant, fragrance in the scented Products, and chamomile—that contradict the Hypoallergenic Representations; (3) are scented by fragrance and chamomilla recutita (matricaria) flower extract rather than from the named botanicals—contradicting the Scented Representations; and (4) contain chamomilla recutita (matricaria) flower extract which functions as a fragrance—contradicting the Fragrance Free Representations.

86.    Defendant has also violated the UCL's proscription against engaging in unfair business practices. Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of

Business & Professions Code § 17200, *et seq.*, in that Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There is no utility to misrepresenting the true composition of the Products, the source of their scent, or the absence of fragrance to the detriment of consumers. Furthermore, Defendant's false and misleading Representations are detrimental to other personal care product manufacturers that either do not make similar claims, or if they do, they do not contradict them by adding synthetic ingredients and known allergens. As such, Defendant's misrepresentations and omissions hurt both consumers and the personal care product market as a whole.

87.    Plaintiffs and the Classes suffered substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omissions about the inclusion of synthetic ingredients, recognized contact allergens, undisclosed fragrance, and the true source of the Products' scent.

88.    The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefor, particularly considering the available legal alternatives which exist in the marketplace. Such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiffs and the other members of the Classes.

89.    Plaintiffs and the Classes could not have reasonably avoided their injury or known that the Products' prominent, front-label marketing was, in fact, inaccurate and contradicted by Defendant's back-label, fine-print ingredient list. Furthermore, consumers do not possess the specialized knowledge to discern whether the ingredients listed on the back panel are natural or synthetic, whether sodium benzoate, fragrance, and chamomile are recognized contact allergens, whether the named botanicals or an undisclosed fragrance supply the Products' scent, or whether chamomile functions as a fragrance. As such, they could not have reasonably avoided the injury they suffered.

90.      Pursuant to California Business and Professions Code § 17203, Plaintiffs and the California Subclass Members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

### COUNT III
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500, et seq.**
**(On Behalf of the California Subclass)**

91.      Plaintiffs hereby incorporate the foregoing allegations as if fully set forth herein.

92.      Plaintiffs bring this claim on behalf of themselves and the California Subclass against Defendant.

93.      Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive members of the California Subclass and the public. As described throughout this Complaint, Defendant's represented that the Products: (i) are made with "99% Water & Plant Based Ingredients" and are "Plant Based"; (ii) are "Hypoallergenic," "Dermatologist Tested," "Sensitive," and "Safe on Sensitive Skin"; (iii) as to the scented Products, are scented by the specific botanicals named on their front labels; and (iv) as to the Fragrance Free variant, are "Fragrance Free" and "Unscented."

94.      Despite those representations, however, the Products: (i) contain multiple synthetic ingredients; (ii) contain recognized contact allergens (sodium benzoate, fragrance, and chamomilla recutita (matricaria) flower extract; (iii) that the scented Products' scent derives predominantly from fragrance and chamomilla recutita (matricaria) flower extract rather than from the named botanicals; and (iv) that the Fragrance Free variant contains chamomilla recutita (matricaria) flower extract, an ingredient that functions as a fragrance.

95.      By its actions, Defendant has disseminated uniform advertising regarding the Products across California and the U.S. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq.* Such advertisements were intended to, and likely did, deceive the consuming public.

96.      The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant affirmatively represented

that the Products (i) are made with "99% Water & Plant Based Ingredients" and are "Plant Based"; (ii) are "Hypoallergenic," "Dermatologist Tested," "Sensitive," and "Safe on Sensitive Skin"; (iii) as to the  scented Products, are scented by the specific botanicals named on their front labels; and (iv) as to the Fragrance Free variant, are "Fragrance Free" and "Unscented."

97.    In making and disseminating these statements, Defendant knew, or should have known, that its advertising was untrue and misleading in violation of California law. Plaintiffs and the members of the California Subclass based their purchasing decisions on Defendant's materially false and misleading representations and warranties about the composition of its Products. Plaintiffs and the California Subclass were injured in fact and lost money and property as a result, in an amount to be proven at trial.

**COUNT IV**
**Violation of State Consumer Protection Statutes**
**(On Behalf of the Multi-State Consumer Protection Subclass)**

98.    Plaintiffs hereby incorporate the foregoing paragraphs as if fully stated herein.

99.    Plaintiffs bring this claim individually and on behalf of the Multi-State Consumer Protection Subclass against Defendant.[55]

100.    Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive members of the Multi-State Consumer Protection Subclass and the public. As described throughout this Complaint, Defendant's represented that the Products: (i) are made

---

[55] While discovery may alter the following, Plaintiffs assert that the states with similar consumer fraud laws under the facts of this case include but are not limited to: Alaska Stat. § 45.50.471, et seq.; Ariz. Rev. Stat. § 44-1521, et seq.; Ark. Code § 4-88-101, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Conn. Gen. Stat. Ann. § 42-110a, et seq.; Del. Code Ann. tit. 6, § 2513, et seq.; D.C. Code § 28-3901, et seq.; Fla. Stat. Ann. § 501.201, et seq.; Haw. Rev. Stat. § 480-2, et seq.; Idaho Code Ann. § 48-601, et seq.; 815 ILCS 505/1, et seq.; Ind. Code § 24-5-0.5-2, et seq.; Kan. Stat. Ann. § 50-623, et seq.; Ky. Rev. Stat. Ann. § 367.110, et seq.; Me. Rev. Stat. Ann. tit. 5, § 207, et seq.; Md. Code Ann., Com. Law § 13-301, et seq.; Mass. Gen. Laws ch. 93A, § 1, et seq.; Mich. Comp. Laws Ann. § 445.901, et seq.; Minn. Stat. § 325F.68, et seq.; Mo. Rev. Stat. § 407.010, et seq.; Neb. Rev. Stat. § 59-1601, et seq.; Nev. Rev. Stat. § 41.600, et seq.; N.H. Rev. Stat. § 358-A:1, et seq.; N.J. Stat. Ann. § 56:8-1, et seq.; N.M. Stat. Ann. § 57-12-1, et seq.; N.Y. Gen. Bus. Law § 349, et seq.; N.C. Gen. Stat. § 75-1.1, et seq.; N.D. Cent. Code § 51-15-01, et seq.; Ohio Rev. Code Ann. § 1345.01, et seq.; Okla. Stat. tit. 15, § 751, et seq.; Or. Rev. Stat. § 646.605, et seq.; 73 Pa. Stat. Ann. § 201-1, et seq.; R.I. Gen. Laws § 6-13.1-1, et seq.; S.D. Codified Laws § 37-24-1, et seq.; Tex. Bus. & Com. Code Ann. § 17.41, et seq.; Utah Code Ann. § 13-11-4, et seq.; Vt. Stat. Ann. tit. 9, § 2451, et seq.; Va. Code Ann. § 59.1-196, et seq.; Wash. Rev. Code § 19.86.010, et seq.; W. Va. Code § 46A-1-101, et seq.; Wis. Stat. § 100.18, et seq.; and Wyo. Stat. Ann. § 40-12-101, et seq.

---

with "99% Water & Plant Based Ingredients" and are "Plant Based"; (ii) are "Hypoallergenic," "Dermatologist Tested," "Sensitive," and "Safe on Sensitive Skin"; (iii) as to the scented Products, are scented by the specific botanicals named on their front labels; and (iv) as to the Fragrance Free variant, are "Fragrance Free" and "Unscented."

101.    Despite those representations, however, the Products: (i) contain multiple synthetic ingredients; (ii) contain recognized contact allergens (sodium benzoate, fragrance, and chamomilla recutita (matricaria) flower extract; (iii) that the scented Products' scent derives predominantly from fragrance and chamomilla recutita (matricaria) flower extract rather than from the named botanicals; and (iv) that the Fragrance Free variant contains chamomilla recutita (matricaria) flower extract, an ingredient that functions as a fragrance

102.    The foregoing deceptive acts and practices were directed at consumers and are misleading in a material way because they fundamentally misrepresent the nature, composition, safety, scent source, and value of the Products.

103.    Plaintiffs and the Multi-State Consumer Protection Subclass seek to recover their actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

**COUNT V**
**Breach of Express Warranty**
**(On Behalf of the Multi-State Warranty Subclass)**

104.    Plaintiffs hereby incorporate the foregoing paragraphs as if fully stated herein.

105.    Plaintiffs bring this claim individually and on behalf of the Multi-State Warranty Subclass against Defendant.[56]

---

[56] While discovery may alter the following, Plaintiffs assert that the states with similar express warranty laws under the facts of this case include, but are not limited to: Alaska Stat. § 45.02.313; Ariz. Rev. Stat. § 47-2313; Ark. Code § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. § 42a-2-313; Del. Code Ann. tit. 6, § 2-313; D.C. Code § 28:2-313; Fla. Stat. § 672.313; Ga. Code § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313; 810 ILCS 5/2-313; Ind. Code § 26-1-2-313; Kan. Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313; Me. Rev. Stat. tit. 11, § 2-313; Mass. Gen. Laws ch. 106, § 2-313; Minn. Stat. § 336.2-313; Miss. Code Ann. § 75-2-313; Mo. Rev. Stat. § 400.2-313; Mont. Code Ann. § 30-2-313; Neb. U.C.C. § 2-313; Nev. Rev. Stat. § 104.2313; N.H. Rev. Stat. Ann. § 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. § 25-2-313; N.D. Cent. Code § 41-02-30; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A, § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. Cons. Stat. § 2313; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Codified Laws § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code § 2.313; Utah Code Ann. § 70A-2-313; Vt. Stat. Ann. tit. 9A, § 2-313; Va. Code Ann. § 8.2-313;

---

106. Plaintiffs and the Multi-State Warranty Subclass Members formed a contract with Defendant at the time they purchased the Products. In the alternative, no privity of contract is required because Plaintiffs and the Multi-State Warranty Subclass Members relied on Defendant's written representations on the Products' packaging and official Amazon listings, which Defendant intended consumers to review and rely upon.

107. The terms of the contract include the Representations that the Products (i) are made with "99% Water & Plant Based Ingredients" and are "Plant Based"; (ii) are "Hypoallergenic," "Dermatologist Tested," "Sensitive," and "Safe on Sensitive Skin"; (iii) as to the scented Products, are scented by the specific botanicals named on their front labels; and (iv) as to the Fragrance Free variant, are "Fragrance Free" and "Unscented."

108. These Representations constitute express warranties and became part of the basis of the bargain between Plaintiffs and the Multi-State Warranty Subclass and Defendant.

109. As set forth above, Defendant breached its express warranties by because the Products: (i) contain multiple synthetic ingredients; (ii) contain recognized contact allergens (sodium benzoate, fragrance, and chamomilla recutita (matricaria) flower extract; (iii) that the scented Products' scent derives predominantly from fragrance and chamomilla recutita (matricaria) flower extract rather than from the named botanicals; and (iv) that the Fragrance Free variant contains chamomilla recutita (matricaria) flower extract, an ingredient that functions as a fragrance

110. Plaintiffs provided Defendant with timely pre-suit notice of the breaches alleged herein.

111. Plaintiffs and the Multi-State Warranty Subclass performed all conditions precedent to Defendant's liability when they purchased the Products.

112. Plaintiffs and the members of the Multi-State Warranty Subclass would not have purchased the Products had they known the true nature of the Products.

Wash. Rev. Code Ann. § 62A.2-313; W. Va. Code § 46-2-313; Wis. Stat. § 402.313; and Wyo. Stat. Ann. § 34.1-2-313.

113. As a result, Plaintiffs and each member of the Multi-State Warranty Subclass suffered financial damage and injury and are entitled to all damages, costs, interest, and fees, including attorneys' fees, as allowed by law.

## COUNT VI
### Unjust Enrichment
### (On Behalf of the Nationwide Class)

114. Plaintiffs hereby incorporate the foregoing paragraphs as if fully stated herein.

115. Plaintiffs bring this claim individually and on behalf of the Nationwide Class against Defendant under California law or, in the alternative, under the laws of the states in which the Nationwide Class members purchased the Products.

116. To the extent required, Plaintiffs assert this cause of action in the alternative to legal claims, as permitted by Rule 8.

117. Plaintiffs and the Class Members conferred a benefit on Defendant in the form of the purchase money Defendant received from their purchases of the Products.

118. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class Members' purchases of the Products, which retention is unjust and inequitable because Defendant represented that the Products were plant-based and hypoallergenic, were scented as represented, and were free of ingredients that function as a fragrance, when they were not.

119. Plaintiffs and the Class Members have suffered an injury in fact and have lost money as a result of Defendant's unlawful conduct, and are entitled to restitution and disgorgement of all profits Defendant unjustly retained.

## PRAYER FOR RELIEF

120. WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant as follows:

(a) For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiffs as representatives of the Classes, and Plaintiffs' Counsel as Class Counsel;

(b) For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

(c) For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury, except that Plaintiffs do not presently seek damages under the CLRA;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiffs' and the Classes' reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

Dated:  June 18, 2026                          Respectfully submitted,

**GUCOVSCHI LAW FIRM, PLLC.**

By:  _/s/ Adrian Gucovschi_
Adrian Gucovschi (State Bar No. 360988)
Nathaniel Haim Sari (State Bar No. 362634)
165 Broadway, Fl. 23
New York, NY 10006
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com
                nsari@gucovschilaw.com

*Attorneys for Plaintiffs*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Adrian Gucovschi, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a partner at Gucovschi Law Firm, PLLC, counsel of record for Plaintiffs in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the transaction alleged in the Complaint occurred in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at New York, New York, on June 18, 2026.

*/s/ Adrian Gucovschi*
Adrian Gucovschi