**BARNES & THORNBURG LLP**
Paul Olszowka (admitted *pro hac vice*)
*Paul.Olszowka@btlaw.com*
Christine E. Skoczylas (admitted *pro hac vice*)
*Christine.Skoczylas@btlaw.com*
One N. Wacker Dr., Suite 4400
Chicago, IL 60606-2833
Telephone: (312) 357-1313
Facsimile: (312) 759-5646

**BARNES & THORNBURG LLP**
Amy C. Poyer (SBN 277315)
*apoyer@btlaw.com*
2029 Century Park East, Suite 300
Los Angeles, California 90067-2904
Telephone: (310) 284-3880
Facsimile: (310) 284-3894

Attorneys for Defendant Dude Products, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RENA ROMAN and BRYAN DAWE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DUDE PRODUCTS, LLC,<br><br>Defendant. | Case No. 5:26-cv-06023-PCP<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Date: October 22, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. P. Casey Pitts<br>Crtrm.: 8, 4th Floor |

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 22, 2026, at 10:00 a.m. or as soon thereafter as this matter can be heard, in the Courtroom of the Honorable P. Casey Pitts of the above-entitled Court, located at 280 South 1st Street, San Jose, CA 95113, in Courtroom 8, located on the 4th Floor, Defendant Dude Wipes, LLC, will present its Motion to Dismiss Class Action Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

By this Motion, Dude Products, LLC, seeks an Order dismissing all causes of action in Plaintiffs' Complaint for failure to state a claim upon which relief may be granted, and additionally or alternatively, dismissing certain claims for lack of standing.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Christine E. Skoczylas and the exhibits attached thereto, and all pleadings, papers, and documents on file herein, and any other written or oral submissions that may be presented at or before the hearing on this Motion.

Dated: August 28, 2026 **BARNES & THORNBURG LLP**

By: */s/ Christine E. Skoczylas*
Christine E. Skoczylas

Attorneys for Defendant Dude Products, LLC

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. RELEVANT FACTUAL ALLEGATIONS ..... 2

III. LEGAL STANDARDS ..... 4

IV. ARGUMENT ..... 5

A. Because Plaintiffs do not plausibly allege that any of Defendant's Product representations are false or misleading, Counts I-III should be dismissed for failure to state a claim. ..... 5

1. The Products' qualified Plant Based representation would not deceive a reasonable consumer as a matter of law. ..... 6

(a) Plaintiffs' construction of the Products' "99% Water & Plant Based Ingredients" representation is implausible. ..... 6

(b) Any ambiguity is resolved by the Product's ingredient panel. ..... 7

2. Plaintiffs' Hypoallergenic claims fail because they have not plausibly alleged that Products containing the alleged allergens are not hypoallergenic. ..... 8

(a) Plaintiffs have not plausibly alleged that the mere presence of an Alleged Allergen in a Product's formula makes its Hypoallergenic representations false. ..... 9

(b) The mischaracterized studies cited in the Complaint do not provide factual support for Plaintiffs' Hypoallergenic claims. ..... 11

(i) This Court can take the facts presented in the cited studies as true because they are incorporated by reference in the Complaint. ..... 11

(ii) Plaintiffs' own cited scientific evidence undermines—rather than supports—their sodium benzoate theory. ..... 13

(iii) The articles that Plaintiffs cite as factual support for their fragrance theory are equally unhelpful. ..... 14

(iv) Plaintiffs' own scientific sources fundamentally undermine Plaintiffs' chamomile theory. ..... 15

3. Plaintiffs' Scented claims fail because the Products' front labels tell consumers what the Products smell like, not the ingredient imparting that smell. ....17

(a) A sensory descriptor is not an ingredient claim. ....17

(b) The ingredient labels confirm, not contradict, the front labels. ....18

4. Plaintiffs' Fragrance Free claim fails because they do not allege that the wipes at issue have a perceptible smell. ....19

5. Plaintiffs' claims under the UCL's "unlawful" and "unfair" prongs are as defective as their claims under the UCL's "fraudulent" prong. ....20

B. Plaintiffs' express warranty and unjust enrichment claims fail along with their CLRA, UCL, and FAL claims. ....22

C. Plaintiffs lack standing to seek injunctive relief because they face no immediate, concrete harm. ....22

D. Plaintiffs lack standing to bring claims on behalf of multistate and nationwide classes because they only purchased DUDE Wipes in California. ....23

E. Plaintiffs have not complied with the CLRA's notice requirement. ....24

V. CONCLUSION ....25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Akers v. Costco Wholesale Corporation*, 631 F. Supp. 3d 625 (S.D. Ill. 2022) .......... 18

*Arroyo v. Pfizer, Inc.*, No. 12-cv-4030, 2013 WL 415607 (N.D. Cal. Jan. 31, 2013) .......... 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 5

*Azoulai v. BMW of North America LLC*, No. 16-cv-00589, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) .......... 22

*Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969 (7th Cir. 2020) .......... 21

*Becerra v. Dr Pepper/Seven Up, Inc.*, No. 17-cv-05921, 2018 WL 3995832 (N.D. Cal. Aug. 21, 2018) .......... 6

*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) .......... 5

*Bodenburg v. Apple Inc.*, 146 F.4th 761 (9th Cir. 2025) .......... 6

*Bryan v. Del Monte Foods, Inc.*, No. 23-3685, 2024 WL 4866952 (9th Cir. Nov. 22, 2024) .......... 8

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .......... 22

*Clark v. Westbrae Natural, Inc.*, No. 20-cv-03221, 2021 WL 1580827 (N.D. Cal. Apr. 22, 2021) .......... 17

*Collyer v. Catalina Snacks Inc.*, 712 F. Supp. 3d 1276 (N.D. Cal. 2024) .......... 18

*Cordes v. Boulder Brands USA, Inc.*, No. 18-cv-6534, 2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) .......... 23

*Coto Settlement v. Eisenberg*, 593 F.3d 1031 (9th Cir. 2010) .......... 11

*Daniels-Hall v. National Education Association*, 629 F.3d 992 (9th Cir. 2010) .......... 11

*Davidson v. Kimberly-Clark Corporation*,
889 F.3d 956 (9th Cir. 2018) ........ 23

*Davidson v. Sprout Foods, Inc.*,
106 F.4th 842 (9th Cir. 2024) ........ 10

*DeArmey v. Hawaiian Isles Kona Coffee Company*,
No. 19-cv-432, 2019 WL 6723413 (C.D. Cal. July 22, 2019) ........ 24

*Donadio v. Bayer HealthCare LLC*,
No. 6:22-cv-06521, 2024 WL 1157044 (W.D.N.Y. Mar. 18, 2024) ........ 18

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ........ 5, 22

*Eckler v. Wal-Mart Stores, Inc.*,
No. 12-cv-727, 2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) ........ 12

*Eidmann v. Walgreen Company*,
522 F. Supp. 3d 634 (N.D. Cal. 2021) ........ 21

*Erickson v. Kimberly-Clark Corporation*,
No. 24-cv-07032, 2025 WL 2105830 (N.D. Cal. July 28, 2025) ........ 9, 10

*ESG Capital Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ........ 22

*Fahey v. Whole Foods Market, Inc.*,
No. 20-cv-06737, 2021 WL 2816919 (N.D. Cal. June 30, 2021) ........ 18

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013) ........ 5

*Grausz v. Hershey Company*,
713 F. Supp. 3d 818 (S.D. Cal. 2024) ........ 11

*Hadley v. Kellogg Sales Company*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ........ 9, 10, 20, 21

*Harris v. McDonald's Corporatinio*,
No. 20-cv-06533, 2021 WL 2172833 (N.D. Cal. Mar. 24, 2021) ........ 18

*Husain v. Campbell Soup Company*,
747 F. Supp. 3d 1265 (N.D. Cal. 2024) ........ 6, 7

*Johnson v. Nissan North America, Inc.*,
272 F. Supp. 3d 1168 (N.D. Cal. 2017) ........ 24

*Kearns v. Ford Motor Co.*,
567 F.3d 1120, 1127 (9th Cir. 2009) ........ 5

*Kwan v. SanMedica International*,
854 F.3d 1088 (9th Cir. 2017)........................................................................5, 2

*Luxton v. Maneuver Marketing PTE Ltd.*,
--- F. Supp. 3d ---, No. 5:25-cv-04004, 2026 WL 1741450 (N.D. Cal. June 16, 2026)........................................................................12

*Martin v. Doctor's Best, Inc.*,
No. 8:23-cv-00378, 2023 WL 6370230 (C.D. Cal. Aug. 25, 2023)........................................12

*Martin v. Onnit Labs Inc.*,
No. 2:23-cv-03737, 2023 WL 8190712 (C.D. Cal. Oct. 18, 2023)........................................12

*Mayfield v. United States*,
599 F.3d 964 (9th Cir. 2010)........................................................................22

*Mazza v. American Honda Motor Company*,
666 F.3d 581 (9th Cir. 2012)........................................................................24

*McAteer v. Target Corporation*,
No. 18-cv-349, 2018 WL 3597675 (D. Minn. July 26, 2018) ................................................10

*McCoy v. Nestle USA, Inc.*,
716 F. Supp. 3d 1228 (N.D. Fla. 2024)........................................................................18

*McGinity v. Procter & Gamble Company*,
69 F.4th 1093 (9th Cir. 2023)........................................................................7

*McWhorter v. Procter & Gamble Company*,
No. 24-cv-00806, 2025 WL 948061 (N.D. Cal. Mar. 28, 2025)...........................................6, 8

*Mejia v. Chipotle Mexican Grill, Inc.*,
793 F. App'x 519 (9th Cir. 2019)........................................................................20

*Miller v. Arizona Beverages USA LLC*,
No. 23-cv-03540, 2024 WL 5339466 (N.D. Cal. June 5, 2024) ............................................23

*Mollicone v. Universal Handicraft, Inc.*,
No. 2:16-cv-07322, 2017 WL 440257 (C.D. Cal. Jan. 30, 2017) ..........................................24

*Moreno v. Vi-Jon, Inc.*,
No. 20-cv-1446, 2021 WL 807683 (S.D. Cal. Mar. 3, 2021) ..................................................8

*Murray v. Elations Company*,
No. 13-cv-02357, 2014 WL 3849911 (S.D. Cal. Aug. 4, 2014) .............................................12

*Nacarino v. Chobani, LLC*,
No. 20-cv-07437, 2021 WL 3487117 (N.D. Cal. Aug. 9, 2021) ......................................17, 19

*Pardini v. Unilever United States, Inc.*,
961 F. Supp. 2d 1048 (N.D. Cal. 2013) .......... 24

*Pitre v. KeVita, Inc.*,
No. 24-cv-06309, 2025 WL 2294913 (N.D. Cal. Aug. 8, 2025) .......... 2

*Portelli v. WWS Acquisition, LLC*,
No. 17-cv-2367, 2018 WL 9539773 (S.D. Cal. July 6, 2018) .......... 20

*Robie v. Trader Joe's Company*,
No. 20-cv-07355, 2021 WL 2548960 (N.D. Cal. June 14, 2021) .......... 18, 22

*Schertzer v. Samsonite Company Stores, LLC*,
No. 19-cv-639, 2020 WL 4281990 (S.D. Cal. Feb. 25, 2020) .......... 4

*Shanks v. Jarrow Formulas, Inc.*,
No. 18-cv-09437, 2019 WL 7905745 (C.D. Cal. Dec. 27, 2019) .......... 23

*Sneed v. Procter & Gamble Company*,
No. 23-cv-05443, 2024 WL 5384684 (N.D. Cal. Aug. 19, 2024) .......... 12

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 5, 11, 13

*Stewart v. Kodiak Cakes, LLC*,
537 F. Supp. 3d 1103 (S.D. Cal. 2021) .......... 23

*In re Trader Joe's Company Dark Chocolate Litigation*,
726 F. Supp. 3d 1150 (S.D. Cal. 2024) .......... 10

*Truss v. Bayer Healthcare Pharmaceuticals Inc.*,
No. 21-cv-9845, 2022 WL 16951538 (S.D.N.Y. Nov. 15, 2022) .......... 13

*Tubbs v. AdvoCare International, L.P.*,
No. 17-cv-4454, 2018 WL 11351992 (C.D. Cal. Mar. 21, 2018) .......... 12

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .......... 11

*Wehlage v. EmpRes Healthcare Inc.*,
No. 10-cv-5839, 2012 WL 380364 (N.D. Cal. Feb. 6, 2012) .......... 24, 25

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) .......... 4

*Whiteside v. Kimberly-Clark Corporporation*,
108 F.4th 771 (9th Cir. 2024) .......... 7

*Wiggins v. Unilever United States, Inc.*,
684 F. Supp. 3d 127 (S.D.N.Y. 2023) .......... 9

*Wong v. Iovate Health Sciences U.S.A. Inc.*,
No. 2:24-cv-00901, 2025 WL 821451 (E.D. Cal. Mar. 14, 2025) .......... 21

**California Cases**

*Morgan v. AT&T Wireless Services, Inc.*,
177 Cal. App. 4th 1235 (2009) .......... 25

**Federal Statutes**

15 U.S.C. § 45(a) .......... 20

21 U.S.C. § 362 .......... 20

**California Statutes**

California Business & Professional Code
§ 17200. .......... *passim*
§ 17500 .......... *passim*

California Civivil Code
§ 1750 .......... *passim*
§ 1782(a) .......... 24

California Commercial Code
§ 2313(1)(a) .......... 22

**Other Authorities**

16 C.F.R. part 260 .......... 20

21 C.F.R. § 701.1 .......... 20, 21

21 C.F.R. § 701.1(b) .......... 21

21 C.F.R. § 701.3 .......... 20, 21

21 C.F.R. § 701.3(a) .......... 21

Fed. R. Civ. P. 9(b) .......... 5, 9, 20

Fed. R. Civ. P. 12(b)(1) .......... 4, 23

Fed. R. Civ. P. 12(b)(6) .......... 4, 5, 11

## INDEX OF EXHIBITS

**For the Court's convenience, the documents cited in the Complaint, as indexed below, are attached to the Declaration of Christine E. Skoczylas ("Skoczylas Decl.")**

| Exhibit # | Description | Reference |
|---|---|---|
| Exhibit 1 | Nicholas J. Lawrance, C.R. Holden & D.J. Gawkrodger, *Sodium Benzoate as an Emerging but Problematic Allergen: Retrospective Analysis of Patch Test Results in 3198 Cases Underlines the Need for an Improved Test Preparation, as Even Dubious Reactions May Be Clinically Relevant*, 93 CONTACT DERMATITIS 114 (2025) | Doc. 1, ¶ 25 n.22 |
| Exhibit 2 | Arto Lahti, *Non-Immunologic Contact Urticaria*, 60 Acta DERMATO-VENEREOLOGICA (STOCKH.) (Supp. 91) 1 (1980) | Doc. 1, ¶ 25 n.23 |
| Exhibit 3 | Robert L. Rietschel & Joseph F. Fowler, Jr., FISHER'S CONTACT DERMATITIS (ch. 16) 266 (6th ed. 2008) | Doc. 1, ¶ 25 n.23 |
| Exhibit 4 | Bindu Nair, *Final Report on the Safety Assessment of Benzyl Alcohol, Benzoic Acid, and Sodium Benzoate*, 20 INT'L J. TOXICOLOGY (Supp. 3) 23 (2001) | Doc. 1, ¶ 25 n.24 |
| Exhibit 5 | American Academy of Dermatology, *Eczyma Types: Contact Dermatitis Overview* | Doc. 1, ¶ 29 n.32 |
| Exhibit 6 | Jeanne D. Johansen, *Fragrance Contact Allergy: A Clinical Review*, 4 AM. J. CLIN. DERMATOL. 789 (2003) | Doc. 1, ¶ 29 n.32 |
| Exhibit 7 | Judy Cheng & Kathryn A. Zug, *Fragrance Allergic Contact Dermatitis*, 25 DERMATITIS 232 (2014) | Doc. 1, ¶ 29 n.32 |
| Exhibit 8 | Breast Cancer Prevention Partners, *Right to Know: Just How Hazardous Are Fragrances?* (July 2025) | Doc. 1, ¶ 29 n.33 |
| Exhibit 9 | Frances J. Storrs, *Fragrance*, 18 Dermatitis 3 (2007) | Doc. 1, ¶ 29 n.34 |
| Exhibit 10 | Sharon E. Jacob & Mari Paz Castanedo-Tardan, *Alternatives for Fragrance-Allergic Children*, 37 PEDIATRIC ANNALS 102 (2008) | Doc. 1, ¶ 29 n.34 |
| Exhibit 11 | U.S. Food & Drug Administration, *Fragrances in Cosmetics* | Doc. 1, ¶ 29 n.35 |
| Exhibit 12 | U.S. Food & Drug Administration, Disclosure of Fragrance Allergens in Cosmetic Labeling, RIN 0910-AI90, Unified Agenda of Regulatory and Deregulatory Actions (Spring 2024) | Doc. 1, ¶ 29 n.36 |

| | | |
|---|---|---|
| Exhibit 13 | Priyanka Rana *et al.*, *Regulatory Frameworks for Fragrance Safety in Cosmetics: A Global Overview*, 41 TOXICOLOGICAL RES. 199 (2025) | Doc. 1, ¶ 30 n.37 |
| Exhibit 14 | Evy Paulsen, *Contact Sensitization from Compositae-Containing Herbal Remedies and Cosmetics*, 47 CONTACT DERMATITIS 189 (2002) | Doc. 1, ¶ 35 n.45 |
| Exhibit 15 | Amanda Oakley, *Compositae Allergy*, DERMNET NZ (2009) | Doc. 1, ¶ 35 nn.45, 47 |
| Exhibit 16 | European Society of Contact Dermatitis, *Patient Information Leaflet: Compositae mix II*, | Doc. 1, ¶ 35 n. 46 |
| Exhibit 17 | Chemotechnique Diagnostics, Patch Test Products, Compositae Mix II (Mx-29B) (2024) | Doc. 1, ¶ 35 n.46 |
| Exhibit 18 | Contact Dermatitis Institute, *Compositae Mix* (2014) | Doc. 1, ¶ 35 n.46 |
| Exhibit 19 | Vanessa Ngan, *Balsam of Peru Allergy*, DERMNET NZ (2002) | Doc. 1, ¶ 35 n.47 |
| Exhibit 20 | Evy Paulsen, Lars P. Christensen & Klaus E. Andersen, *Cosmetics and Herbal Remedies with Compositae Plant Extracts – Are They Tolerated by Compositae-Allergic Patients?*, 58 CONTACT DERMATITIS 15 (2008) | Doc. 1, ¶ 35 n.48 |
| Exhibit 21 | Wilbur Johnson *et al.*, *Amended Safety Assessment of Chamomilla Recutita-Derived Ingredients as Used in Cosmetics*, 37 INT'L J. TOXICOLOGY (Supp. 3) 51S (2018) | Doc. 1, ¶ 35 n.49, ¶ 34 n.42 |
| Exhibit 22 | COSMILE Europe, *Chamomilla Recutita Flower Extract* (INCI Detail) | Doc. 1, ¶ 33, n.38, ¶ 34 n.43 |
| Exhibit 23 | Nature in Bottle, *Chamomile Extract Organic (Matricaria Recutita Flower Extract)* | Doc. 1, ¶ 33 n.39 |
| Exhibit 24 | *Chamomile Extract by MakingCosmetics, Inc.*, UL PROSPECTOR | Doc. 1, ¶ 33 n.39 |
| Exhibit 25 | Janmejai K. Srivastava & Sanjay Gupta, *Extraction, Characterization, Stability and Biological Activity of Flavonoids Isolated from Chamomile Flowers*, 1 MOLECULAR & CELLULAR PHARMACOLOGY 138 (2009) | Doc. 1, ¶ 33 n.39 |

| | | |
|---|---|---|
| Exhibit 26 | The Good Scents Company, *Matricaria Chamomilla Flower Extract* (CAS No. 84082-60-0) | Doc. 1, ¶ 33 at n.40 |
| Exhibit 27 | Kelly A. Aschenbeck & Erin M. Warshaw, *Allergenic Ingredients in Facial Wet Wipes*, 28 DERMATITIS 353 (2017) | Doc. 1, ¶ 33 n.41 |
| Exhibit 28 | Wilbur Johnson *et al.*, *Amended Safety Assessment of Chamomilla Recutita-Derived Ingredients as Used in Cosmetics, Draft Final Amended Report for Panel Review* (June 2016) | Doc. 1, ¶ 34 n.44 |
| Exhibit 29 | *Chamomilla Recutita Flower Extract*, INCIDECODER | Doc. 1, ¶ 34 n.43 |
| Exhibit 30 | Notice and Demand Letter to Dude Products, LLC, from Adrian Gucovschi on behalf of Rena Roman, dated May 18, 2026 | |
| Exhibit 31 | Notice and Demand Letter to Dude Products, LLC, from Adrian Gucovschi on behalf of Bryan Dawe, dated June 2, 2026 | |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION[1]

Plaintiffs seek to hold Defendant liable for product representations are neither false nor misleading. Dude Products sells flushable wipes advertised as made with "99% Water & Plant Based Ingredients," as "Hypoallergenic," as "Scented" by the botanicals named on their front labels, and, for one variety, as "Fragrance Free." Yet Plaintiffs do not allege that they were injured or irritated by the wipes in any way, that the scented wipes did not smell like the advertised scent, or that the fragrance-free variety smelled like anything, and their Plant Based claim rests on a contrived reading of the front label. Plaintiffs also rely on scientific studies and articles that, upon a careful reading, refute the very propositions for which Plaintiffs cited them, and on a sensory descriptor theory that has been roundly rejected by courts across the country. Each of Plaintiffs' four mislabeling theories—Plant Based, Hypoallergenic, Scented, and Fragrance Free—fails the reasonable consumer test as a matter of law, defeating their CLRA, UCL (fraudulent prong), and FAL claims. Their derivative UCL (unfair and unlawful prongs), multistate consumer protection act, express warranty, and unjust enrichment claims fall with them.

Plaintiffs separately lack standing to pursue injunctive relief because, now knowing that the wipes contain some synthetic ingredients, alleged allergens, fragrance, and an anti-inflammatory and skin-smoothing ingredient that can function as a fragrance in other products, they cannot plausibly allege that they will be deceived again. They also lack standing to pursue claims under the laws of any state other than California, the one state in which they purchased Defendant's products and suffered their alleged injuries, defeating their attempt to represent multistate and nationwide classes. Finally, neither Plaintiff's CLRA notice to Defendant raised the Scented and Fragrance Free claims that appear now in their Complaint, so those CLRA claims are procedurally barred.

Because Plaintiffs' factual allegations do not plausibly allege any wrongdoing by Defendant under any theory, their Complaint should be dismissed in its entirety.

[1] Capitalized terms have the same meaning as defined in the Complaint (Doc. 1).

## II. RELEVANT FACTUAL ALLEGATIONS

The following facts are taken from the Complaint and materials cited in the Complaint.

Defendant Dude Products, LLC, manufactures, markets, and sells flushable wipes under the "DUDE Wipes" brand throughout the United States, including in California, through Amazon.com and retail stores. Doc. 1, ¶ 9. The Complaint alleges that six DUDE Wipes varieties are deceptively labeled: Fragrance Free (standard and travel sizes), Mint Chill, Odor Destroyer, Shea Butter Smooth, Coffee (Morning Grind), and Herbal Relief (the "Products"). *Id.* at ¶ 20.

Plaintiff Rena Roman alleges that she "saw" and "relied on" representations about the Products—specifically, the "99% Water & Plant Based Ingredients," "Hypoallergenic," "Dermatologist Tested," safe for "Sensitive Skin," "Fragrance Free," and "Unscented" representations—from Amazon. *Id.* at ¶ 5. However, she only purchased the Fragrance Free product from Amazon on or about May 23, 2025. *Id.* Like Roman, Plaintiff Bryan Dawe alleges that he "saw" and "relied upon" the same representations but only purchased the Fragrance Free and Mint Chill Products from Amazon on or about July 16, 2025. *Id.* at ¶ 7. Neither Plaintiff claims to have purchased the four other identified DUDE Wipes varieties identified in the Complaint.

Plaintiffs' claims concern both the Product labeling (front and back panels) visible on Amazon's website and other representations on the website that are not on the labels. *Id.* at ¶¶ 20-21. The Complaint groups the challenged representations into four categories: (1) "Plant Based"; (2) "Hypoallergenic"; (3) "Scented"; and (4) "Fragrance Free." *Id.* at ¶¶ 39-43.

**(1) Plant Based:** Plaintiffs allege that a reasonable consumer would understand "99% Water & Plant Based Ingredients" to mean that the Products contain 99% water, 1% plant-based ingredients, and 0% synthetic ingredients. *Id.* at ¶ 40. Based on this construction, Plaintiffs assert that Defendant's Plant Based Representations are false because the Products contain various synthetic ingredients. *Id.* at ¶ 23; *see also id.* at ¶¶ 24-28, 37-38. Plaintiffs do not allege that they had any of the Products tested to determine what percentage of the Products' formulas are synthetic ingredients or whether the concentration of those ingredients is greater than 1%.

**(2) Hypoallergenic:** Plaintiffs allege that a reasonable consumer would understand "hypoallergenic" to mean that "a product is specifically formulated to reduce the likelihood of

allergic reactions." *Id.* at ¶ 41. Because the Products' ingredients include what Plaintiffs allege are "contact allergens" (sodium benzoate, fragrance, and chamomile extract), Plaintiffs assert that Defendant's Hypoallergenic Representation is false. *Id.* at ¶ 41; *see also id.* at ¶¶ 25, 29-30, 34. Critically, however, Plaintiffs do *not* allege that: they or any of their family members actually experienced an allergic reaction or skin sensitivity after using the Products; the Products were not, in fact, dermatologist tested; the Products failed any clinical allergen testing; or the amount of the alleged "contact allergens" in the Products. Instead, Plaintiffs rely on studies, reviews, and other articles that they assert support their conclusory allegations that the mere presence of sodium benzoate, fragrance, or chamomile extract makes Defendant's Hypoallergenic Representations false. *Id.* at ¶¶ 25 (nn.21-24), 29-30 (nn.32-37), ¶ 35 (nn.45-49).

**(3) Scented:** Plaintiffs allege that five of the Products claim to be "scented" by the specific botanicals identified on the Product labels: "With Mint & Eucalyptus Oils" (Mint Chill); "Light Scents Of Citrus And Sea Salt" (Odor Destroyer); "Shea Butter And Coconut Scented" (Shea Butter); "Infused With Coffee" (Coffee); and "Witch Hazel And Essential Geranium Oil" (Herbal Relief). *Id.* at ¶ 42. Plaintiffs do not allege anything about how the Products smell or assert that the "scented" varieties do not smell like mint, eucalyptus, citrus, sea salt, shea butter, coconut, coffee, witch hazel, or geranium. Instead, Plaintiffs allege that a reasonable consumer would understand that each "scent derives predominantly, if not exclusively, from those named ingredients." *Id.* Because the Products' ingredient panels indicate that the scents are predominantly imparted by "fragrance" ingredients, and the named ingredients "are only present in *de minimis* amounts," Plaintiffs allege that Defendant's Scented Representations are false or misleading. *Id.*

**(4) Fragrance Free:** Plaintiffs allege that a reasonable consumer would understand the terms "Fragrance Free" and "Unscented" to mean that "the Product does not contain ingredients that function as fragrances . . . ." *Id.* at ¶ 43. Plaintiffs assert that Defendant's representations that its Fragrance Free variety is "Fragrance Free" and "Unscented" are false and misleading because the Product contains chamomile extract, which they allege functions as a fragrance. *Id.*; *see also id.* at ¶¶ 33-34. Plaintiffs support this claim with references to literature purporting to establish that chamomile extract is a fragrance ingredient. *Id.* at ¶¶ 33-34 (nn.38-44). Plaintiffs do not, however,

allege that the Fragrance Free product has a perceptible smell.

Prior to filing the Complaint, each Plaintiff served a CLRA notice on Defendant, asserting that Defendant's Plant Based and Hypoallergenic representations are false and misleading. *See* Skoczylas Decl., ¶¶ 32-33, Exs. 30-31. The notices do not in any way suggest that Plaintiffs intended to bring statutory and common law claims based on the Scented or Fragrance Free representations. *See id.* Nevertheless, based on all four of the categories of claims, Plaintiffs assert six causes of action, for themselves individually and on behalf of California, multistate, or nationwide classes: (1) violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"); (2) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"); (3) violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL"); (4) violation of various states' consumer protection laws (multistate); (5) breach of California's and various states' express warranty laws (multistate); and (6) unjust enrichment (nationwide). Doc. 1, ¶ 4. For these claims, Plaintiffs seek monetary damages, restitution, disgorgement of profits, injunctive relief, statutory damages, punitive damages, and attorneys' fees. *Id.* at ¶ 120, Prayer for Relief.

As set forth below, Plaintiffs are not entitled to any relief because all of their causes of action fail as a matter of law, and the Court should dismiss the Complaint in its entirety.

## III. LEGAL STANDARDS

"Because the issue of standing pertains to the subject matter jurisdiction of a federal court, motions raising lack of standing are properly brought under Federal Rule of Civil Procedure 12(b)(1)." *Schertzer v. Samsonite Co. Stores, LLC,* No. 19-cv-639, 2020 WL 4281990, at *2 (S.D. Cal. Feb. 25, 2020) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). Challenges to standing may be either facial (requiring the Court to presume the allegations in the complaint as true) or factual (allowing the Court to consider matters of public record without converting the motion into one for summary judgment and not accepting the truth of allegations in the complaint). *White*, 227 F.3d at 1242. Defendant brings a facial challenge.

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court considers whether the plaintiff can prove facts supporting a claim that would merit relief, accepting all well-pleaded factual

allegations as true and construing the complaint in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, a court need not accept allegations that contradict matters subject to judicial notice, or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001). The complaint must plead more than facts supporting a mere possibility of success; otherwise, a plaintiff with a groundless claim may cause other parties to incur substantial cost, including expensive discovery, or use the threat of expense to force an unwarranted settlement. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557–59 (2007). Dismissal under Rule 12(b)(6) is proper where the complaint either lacks a cognizable legal theory or fails to allege sufficient facts to establish a cause of action under a cognizable legal theory where relief is plausible. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017). Further, where, as here, a complaint includes references to extrinsic sources, those sources may be considered and a court may reject allegations contradicted by those sources. *Sprewell*, 266 F.3d at 988.

Claims that sound in fraud—including CLRA, UCL, and FAL claims—must be pled with the particularity required by Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). The Rule required fraud allegations to be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* at 1125 (internal quotation marks omitted) (alteration in original).

## IV. ARGUMENT

### A. Because Plaintiffs do not plausibly allege that any of Defendant's Product representations are false or misleading, Counts I-III should be dismissed for failure to state a claim.

To prevail on their CLRA, UCL, and FAL claims, Plaintiffs must establish that Defendant's allegedly deceptive labeling was "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (applying California law). "This requires more than a mere possibility that [defendant's] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (internal quotation marks omitted). Plaintiffs must plausibly allege "that a significant portion of the general consuming public or of targeted

consumers, acting reasonably in the circumstances, could be misled" for their statutory claims to survive dismissal. *Bodenburg v. Apple Inc.*, 146 F.4th 761, 769 (9th Cir. 2025). Dismissal under this standard is particularly appropriate where the complaint offers a strained and implausible definition for the challenged labeling claim or statement. *See Becerra v. Dr Pepper / Seven Up, Inc.*, No. 17-cv-5921, 2018 WL 3995832, at *4-5 (N.D. Cal. Aug. 21, 2018), *aff'd*, 945 F.3d 1225 (9th Cir. 2019).

**1. The Products' qualified Plant Based representation would not deceive a reasonable consumer as a matter of law.**

Plaintiffs' Plant Based theory rests on a misreading of the Products' front label, which states that the wipes are made with "99% Water & Plant Based Ingredients." Doc. 1, ¶ 40. Plaintiffs insist that this phrase promises that the Products are "comprised of 99% water, with the remaining 1% consisting of plant based ingredients." *Id.* No reasonable consumer would read the label that way, and, even if the phrase were ambiguous, the ingredient panel resolves any ambiguity as a matter of law. Either way, the Plant Based theory fails the reasonable consumer test, dooming Plaintiffs' CLRA, FAL, and UCL (fraudulent prong) claims.

**(a) Plaintiffs' construction of the Products' "99% Water & Plant Based Ingredients" representation is implausible.**

Plaintiffs allege that the Plant Based representation "indicates that the Products are comprised of 99% water, with the remaining 1% consisting of plant based ingredients." Doc. 1, ¶ 40. This is a lawyer's construct; no reasonable consumer would read the claim this way. The "99%" does not qualify only the word "water." It qualifies the entire phrase that follows. Thus, the claim does not represent, as Plaintiffs allege, that the Products are 99% water and 1% plant-based ingredients or that 0% of the Products' ingredients are synthetic. Plaintiffs "are not free to excise or ignore words on the label to manufacture customer confusion," nor may they "ignore the labels' actual wording or substitute another claim that the Product labels never made." *McWhorter v. Procter & Gamble Co.*, No. 24-cv-00806, 2025 WL 948061, at *7 (N.D. Cal. Mar. 28, 2025). Because the challenged phrase cannot bear the meaning Plaintiffs ascribe to it, their deception theory fails at the threshold.[2]

---

[2] *See, e.g.*, *Husain v. Campbell Soup Co.*, 747 F. Supp. 3d 1265, 1273 (N.D. Cal. 2024), *aff'd*, No.

**(b) Any ambiguity is resolved by the Product's ingredient panel.**

Even if Plaintiffs' strained reading (99% water, 1% plant based ingredients, 0% synthetic) were a plausible construction—it is not—this construction is one of two possible readings, rendering the front label ambiguous. This ambiguity is fatal to Plaintiffs' Plant Based claims.

To survive a motion to dismiss, "a plaintiff must plausibly allege that the front label would be unambiguously deceptive to an ordinary consumer, such that the consumer would feel no need to look at the back label." *Whiteside v. Kimberly-Clark Corp.*, 108 F.4th 771, 780 (9th Cir. 2024). A front label is ambiguous where "reasonable consumers would necessarily require more information before they could reasonably conclude that the front label was making a specific representation." *Id.* (internal quotation marks omitted). When a front label is ambiguous, courts resolve the issue as a matter of law at the motion-to-dismiss stage by considering the back label together with the front label. *See Husain*, 747 F. Supp. 3d at 1274-75. Indeed, "when a front label is ambiguous, the ambiguity can be resolved by reference to the back label," including the ingredient list. *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023). "[T]he front label must be unambiguously deceptive for a defendant to be precluded from insisting that the back label be considered together with the front label." *Id.* at 1098.

Should the Court conclude that the "99% Water & Plant Based Ingredients" representation is ambiguous, this line of authority requires reference to the Products' back label. The front label's "99%" qualifier functions much like the "*70%+ by weight" qualifier that the Ninth Circuit found dispositive in *Whiteside*, where the court affirmed dismissal because the front-label qualifier, "paired with the back label ingredients list," made deception "impossible." 108 F.4th at 785. Indeed, the case for dismissal is even more compelling here than in *Whiteside*, because the "99%" qualification is written prominently on the front label itself, with no need to resort to a back label for clarification.

Courts in this District have applied *Whiteside's* reasoning to closely analogous qualified-

---

24-6041, 2025 WL 3539131 (9th Cir. Dec. 10, 2025) (finding that no reasonable consumer could conclude that "Air Fried," followed by "Kettle Cooked Air Finished," on the front label of potato chips meant that the product was cooked "entirely" in an air fryer).

percentage claims, most notably in *McWhorter*. There, plaintiffs alleged that shampoos and conditioners labeled as containing "90% Natural Origin," and other similarly qualified representations, were false and misleading because they did not "adequately disclose[] the number of ingredients that were naturally derived." *Id.* at *2. The court held that the claims failed the reasonable-consumer test as a matter of law, reasoning that the labels' "provision of a percentage, combined with 'naturally derived' or 'natural origin,' communicates to the consumer that the product is not all natural or at least raises enough ambiguity that the consumer must review the back label for more information about the product composition." *Id.* at *6.

So too here. The "99%" qualification communicates to consumers that up to 1% of the Products' ingredients are not water or plant-based, requiring any reasonable consumer who cares about that 1% to consult the ingredient list. And the ingredient panel dispels any possible confusion: it discloses ingredients that any reasonable consumer would recognize as synthetic, *e.g.*, cocamidopropyl PG-dimonium chloride phosphate. Courts routinely dismiss claims based on front-label statements that "can be resolved by reference to the back label," which "discloses . . . ingredients about which Plaintiff complains." *Bryan v. Del Monte Foods, Inc.*, No. 23-3685, 2024 WL 4866952, at *1 (9th Cir. Nov. 22, 2024).[3]

Because the ingredient list plainly informs consumers that the Products contain some synthetic ingredients, clearing up any ambiguity on the front label, Plaintiffs' Plant Based theory fails as a matter of law. Their CLRA, UCL, and FAL claims premised on that theory should, therefore, be dismissed.

**2. Plaintiffs' Hypoallergenic claims fail because they have not plausibly alleged that Products containing the alleged allergens are not hypoallergenic.**

Plaintiffs allege that a reasonable consumer understands the term "hypoallergenic" to mean that a product is "specifically formulated to reduce the likelihood of allergic reactions." Doc. 1, ¶ 41. Although this definition is reasonable, Plaintiffs have not plausibly alleged that the Products fail to

[3] *See also Moreno v. Vi-Jon, Inc.*, No. 20-cv-1446, 2021 WL 807683, at *5 (S.D. Cal. Mar. 3, 2021) (collecting cases).

satisfy it. They just baldly allege that any product containing sodium benzoate, fragrance, or chamomile extract (the "Alleged Allergens"), in any amount, cannot be lawfully marketed as "hypoallergenic," regardless of whether it has been formulated to reduce the likelihood of causing an allergic reaction. This is implausible as a matter of law, particularly given the absence of an allegation that the Products caused Plaintiffs (or anyone else) to have an allergic reaction after using the wipes.

Neither should the Court credit any of the studies or articles that Plaintiffs cite in the Complaint. When a plaintiff cites scientific evidence to support a conclusory hypoallergenic claim, those referenced sources must support the conclusion that the defendant's representations about its product are false. But here, the cited literature undermines Plaintiffs' conclusory allegation that the presence of the Alleged Allergens, in any amount, means that the Products were not formulated to reduce the likelihood of allergic reactions.

**(a) Plaintiffs have not plausibly alleged that the mere presence of an Alleged Allergen in a Product's formula makes its Hypoallergenic representations false.**

Plaintiffs' CLRA, UCL, and FAL claims cannot survive dismissal unless they allege "plausibly and with specificity" that the Alleged Allergens in the wipes "could cause harm." *Erickson v. Kimberly-Clark Corp.*, No. 24-cv-07032, 2025 WL 2105830, at *4 (N.D. Cal. July 28, 2025). Thus, Plaintiffs cannot plead that the Products' "hypoallergenic" label is false merely by identifying ingredients that, in the abstract, are capable of causing the reaction that the label disclaims. Rather, Rule 9(b) "requires specific factual pleading that indicates why allegedly fraudulent statements are false and misleading." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1090 (N.D. Cal. 2017). Plaintiffs have not done so here.

*Wiggins v. Unilever U.S., Inc.*, 684 F. Supp. 3d 127 (S.D.N.Y. 2023), is instructive. There, plaintiffs alleged that personal care products labeled "hypoallergenic" contained ingredients classified by reputable authorities as skin sensitizers. *Id.* at 149. The court nevertheless dismissed the claim because simply alleging that the products contained classified sensitizers, without facts showing that the chemicals actually cause reactions as formulated, did not make the label false. *Id.* at 149-50. To survive a motion to dismiss, a complaint would have to substantiate that the in-use

concentration of the challenged ingredients was sufficient to cause harm, but, like Plaintiffs' claim here, the plaintiff's complaint fell short. *Id.* at 150-51 (dismissing hypoallergenic claims where plaintiffs neither alleged that the products caused them or their families any skin irritation nor offered any supporting factual allegations "demonstrating that the concentration of the allegedly harmful ingredients in the Dove products . . . cause such harm"); *see also McAteer v. Target Corp.*, No. 18-cv-349, 2018 WL 3597675, at *5 (D. Minn. July 26, 2018) (finding hypoallergenic claims insufficiently pled where "[n]othing in Plaintiff's allegations identify how or why the Makeup Remover Wipes are more likely to cause allergic reactions than competing products").

Courts in this District have dismissed analogous claims in which the plaintiffs inadequately alleged that products labeled as healthy or safe were deceptive because the plaintiffs did not allege that the ingredient was present in a concentration sufficient to cause harm. For example, in *Hadley*, the plaintiffs alleged that labels stating that the product was "healthy" was misleading because it did not disclose "the presence of [allegedly] excess sugar." 243 F. Supp. 3d at 1091-92. The court dismissed plaintiff's CLRA, UCL, and FAL claims because the complaint did "not allege the amount of added sugar . . . [or] that the specific amount of added sugar for each product is unhealthy." *Id.* at 1092.

The Ninth Circuit has endorsed this reasoning. In *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842 (9th Cir. 2024), the court upheld the dismissal of claims where the plaintiffs did "not explain at what level [the allegedly harmful substance] [could] become harmful or why the levels of [that substance] in the[] products, in particular, could cause harm." *Id.* at 853. This logic commands the same result here: Plaintiffs' claims should be dismissed because they have not alleged the amount of the Alleged Allergens in the Products or that the specific amount of each is sufficient to cause an allergic reaction. *See, e.g.*, *Erickson*, 2025 WL 2105830, at *4 (finding "hypoallergenic" and "gentle ingredients" allegations implausible where plaintiff failed "plausibly allege the levels [of PFOS and PFOA] found in the wipes are harmful" and dismissing complaint).[4]

[4] *See also, e.g.*, *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1170-71 (S.D. Cal. 2024) (finding a "disconnect in . . . Plaintiffs' allegations about the potential harms posed by Heavy Metals as a general matter and whether these Heavy Metals are unreasonably hazardous

**(b) The mischaracterized studies cited in the Complaint do not provide factual support for Plaintiffs' Hypoallergenic claims.**

Plaintiffs' cited studies, reviews, and articles, with one exception,[5] have nothing to do with whether the Alleged Allergens, in the concentrations present in a personal care product, are likely to cause an allergic reaction. These references do not support Plaintiffs' conclusory allegation that the Products are not "formulated to reduce the likelihood of allergic reactions." Doc. 1, ¶ 41. Some references, however, actually contradict Plaintiffs' theories.

**(i) This Court can take the facts presented in the cited studies as true because they are incorporated by reference in the Complaint.**

The incorporation-by-reference doctrine is well-settled in this Circuit. The doctrine provides that documents—including those not attached to a complaint—"may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Thus, when ruling on a Rule 12(b)(6) motion, a court may "consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). In such a situation, a "court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks omitted).

Moreover, "[t]he court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell*, 266 F.3d at 988. But for a claim to be plausible, a plaintiff must "plead[] content that allows the court to draw the reasonable inference that

---

at the particular levels in the specific Products at issue in this case" and rejecting claims that the Products posed a health risk); *Grausz v. Hershey Co.*, 713 F. Supp. 3d 818, 828 (S.D. Cal. 2024) (concluding that products were not deceptively labeled because "Plaintiff does not plead the amounts of the substances in [the products] have created an *unreasonable* safety hazard") (emphasis in original).

[5] The one exception actually establishes that the chamomile extract added to personal care wipes does *not* cause allergic reactions or otherwise irritate the skin. *See infra* § IV.A.2.a.iii.

[Defendant] is liable for the misconduct alleged." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (internal quotation marks omitted). "Courts have not hesitated to dismiss claims where evidence does not support the claims that plaintiffs have pled." *Pitre v. KeVita, Inc.*, No. 24-cv-06309, 2025 WL 2294913, at *4 (N.D. Cal. Aug. 8, 2025) (dismissing CLRA, UCL, and FAL claims where the study on which plaintiffs relied for factual support did "not support [plaintiff's] contention that [defendant's] claims about its products' prebiotic benefits are false").[6] This is particularly true where the cited sources did not test the same concentration of an ingredient used in a product,[7] the researchers did not test the particular product at issue or the same combination of ingredients found in the product,[8] the source cited no independent analyses or clinical studies,[9] and

---

[6] *See also, e.g.*, *Martin v. Onnit Labs Inc.*, No. 2:23-cv-03737, 2023 WL 8190712, at *5 (C.D. Cal. Oct. 18, 2023) (dismissing CLRA claim where plaintiff's cited studies did "not plausibly 'debunk' Defendant's representations" about its product's benefits); *Martin v. Doctor's Best, Inc.*, No. 8:23-cv-00378, 2023 WL 6370230, at *7 (C.D. Cal. Aug. 25, 2023) (dismissing CLRA claim where the scientific studies cited in the complaint did not "disprove[]" the defendant's allegedly deceptive advertising claim).

[7] *See, e.g.*, *Luxton v. Maneuver Mktg. PTE Ltd.*, --- F. Supp. 3d ---, No. 5:25-cv-04004 2026 WL 1741450, at *3 (N.D. Cal. June 16, 2026) (Pitts, J.) (dismissing claims where studies cited in the complaint "merely identified health benefits that were provided at [active ingredient] levels far exceeding both the advertised amount and the amount actually present in defendants' supplement," not "evidence of the actual falsehood of any of defendants' benefits claims").

[8] *See, e.g.*, *Tubbs v. AdvoCare Int'l, L.P.*, No. 17-cv-4454, 2018 WL 11351992, at *5 (C.D. Cal. Mar. 21, 2018), *aff'd*, 785 F. App'x 396 (9th Cir. 2019) (concluding that a cited report did not support plaintiffs' claims about defendants' energy and weight-loss products where the author did "not appear to have examined Defendant's products specifically"); *Murray v. Elations Co.*, No. 13-cv-02357, 2014 WL 3849911, at *7 (S.D. Cal. Aug. 4, 2014) (granting motion to dismiss CLRA and UCL claims where "[n]one of the studies cited in the Complaint test [the product] or the same combination of ingredients found in [the product], and therefore do not bear on the truthfulness of the representations as to" the product's joint-improving benefits); *Eckler v. Wal-Mart Stores, Inc.*, No. 12-cv-727, 2012 WL 5382218, at *6 (S.D. Cal. Nov. 1, 2012) (refusing to "accept that the studies [plaintiff] cites lend 'facial plausibility' to her claims that the [product] representations [were] false or misleading" because the studies "didn't even test the actual formulation of" the products in question) (quoting *Iqbal*, 556 U.S. at 678).

[9] *See, e.g.*, *Sneed v. Procter & Gamble Co.*, No. 23-cv-05443, 2024 WL 5384684, at *7 (N.D. Cal. Aug. 19, 2024) (rejecting a Consumer Reports article as support for plaintiffs' claim that defendant's product is habit-forming where the article did "not include any citations to clinical studies" and dismissing California and New York consumer protection act claims); *Tubbs*, 2018 WL 11351992, at *5 (concluding that a cited report did not support plaintiffs' claims about defendants' energy and weight-loss products where the author "apparently conducted no trials or independent analyses to substantiate his views").

the cited source failed to identify, from within the family of chemical compounds tested, which specific compound was an ingredient in the product.[10]

The studies and articles cited by Plaintiffs in support of their Hypoallergenic claims qualify for the Court's consideration on this procedural posture under the incorporation-by-reference doctrine. Plaintiffs not only rely on them; they are the sole support for Plaintiffs' conclusory allegations that the presence of the Alleged Allergens in the Products means that they have not been formulated to reduce the likelihood of an allergic reaction when the wipes are used as directed.[11] Thus, to the extent that the facts presented in those studies and articles undermine or contradict the allegations in the Complaint, the facts in the studies and articles control. *Sprewell*, 266 F.3d at 988. As set forth below, every single source cited in connection with Plaintiffs' Hypoallergenic claims fails to support them for one or more of the reasons identified above, rendering Plaintiffs' claims implausible.

**(ii) Plaintiffs' own cited scientific evidence undermines—rather than supports—their sodium benzoate theory.**

The cited studies contradict Plaintiffs' allegation that the presence of sodium benzoate in the wipes makes the Products' marketing deceptive.[12]

The Lawrance study tested a population that was "atopic," or allergy-prone, with a 5% sodium benzoate concentration applied for at least two days. Skoczylas Decl., ¶ 3, Ex. 1, p. 115. The concentration tested was *ten times* what the EU permits "in rinse-off preparations," *id.*, and, even then, only 1.8% of the test subjects had an allergic reaction. *Id.* at p. 114. The Lahti study further contradicts Plaintiffs' sodium benzoate claim. Skoczylas Decl., ¶ 4, Ex. 2. There, the researchers tested "in-patients" at two hospitals' dermatology departments, and the majority of the

[10] *See, e.g.*, *Truss v. Bayer Healthcare Pharms. Inc.*, No. 21-cv-9845, 2022 WL 16951538, at *5 (S.D.N.Y. Nov. 15, 2022) (dismissing hypoallergenic claims where plaintiffs failed to "specifically identify which benzophenone compound is present in the Product" and literature cited in the complaint indicating a "lack of documented reactions to most benzophenone compounds").

[11] *See* Doc. 1, ¶ 25, n.21-24 (sodium benzoate); *id.* at ¶¶ 29-30, nn.32-37 (fragrance); *id.* at ¶ 35, nn.45-49 (chamomile extract); *see also* Skoczylas Decl., ¶¶ 3-17, Exs. 1-21).

[12] The first cited reference, a DermNet article, Doc. 1, ¶ 25 n.21, is not available. Navigating to the web address identified in the footnote results in a "Page Not Found" error.

test subjects were atopic or suffering from a skin condition. *Id.* at p. 14. The concentration tested was 10%, or *twenty times* what the EU permits in rinse-off preparations, *id.* at p. 22, Table III, and "[n]o immediate reactions were seen . . . ," *id.* at p. 21. These studies do not "debunk" the claims on Amazon that the Products are hypoallergenic.

The Rietchel & Fowler chapter from Fisher's Contact Dermatitis is a treatise, not a study, which observes that sodium benzoate "*may produce* immediate erythema [redness]" or "contact urticaria [hives]," *id.* at ¶ 5, Ex. 3, p. 283 (emphasis added), but sheds no light on whether the ingredient could cause any skin sensitivity when used in a personal care wipe. And the Nair article, a review of other scientists' studies, expressly concluded that "Sodium Benzoate [is] safe for use in cosmetic formulations at concentrations of up to 5%." *Id.* at ¶ 6, Ex. 4, p. 46. These reviews also fail to substantiate that the sodium benzoate ingredient makes the Products more likely to cause an allergic reaction than other similar products.

In the absence of factual support—which none of the cited references provide—Plaintiffs' conclusory allegation that sodium benzoate is an allergen "does not, in itself, suffice to state a claim [for violations of the CLRA, UCL, or FAL] in federal court." *Arroyo v. Pfizer, Inc.*, No. 12-cv-4030, 2013 WL 415607, at *5 (N.D. Cal. Jan. 31, 2013), at *5 (dismissing complaint where the researcher's statements were "either conclusory in nature or fail[ed] to address anything specific about the performance of [defendant's] product").

**(iii) The articles that Plaintiffs cite as factual support for their fragrance theory are equally unhelpful.**

The cited articles do not support Plaintiffs' conclusory allegation that the fragrances in the Products make the Hypoallergenic representations false.

The Johansen article is a review, not a clinical trial, summarizing existing research of various fragrance agents and one particular fragrance mix, Skoczylas Decl., ¶ 8, Ex. 6, pp. 790-791, 790 Table I, but Plaintiffs have not alleged that the Products contain any of the chemicals or any of the components of the mix in their formulations. The Cheng article, another review, also summarized clinical studies of reactions to two different fragrance mixes and several essential oils, *id.* at ¶ 9, Ex. 7, pp. 235-40, none of which are alleged to be present, in any amount, in any of the Products'

formulations. The Cheng authors also observed that "[d]ose of allergen per unit area of skin is one of the most important factors that influence the induction and elicitation of fragrance contact allergy," *id.* at p. 234 (noting patch test dilutions of 1% to 30%), but Plaintiffs have not alleged the concentrations of the unidentified fragrance agents or plausibly alleged that the Products contain enough of these agents that the Hypoallergenic representation is deceptive. The Breast Cancer Prevention article similarly reviews the test results of 48 specific "fragrance chemicals with an overall hazard score of 'high' . . . ," *id.* at ¶ 10, Ex. 8, p. 4, 5-7, Table I, none of which are plausibly alleged to be in the Products' formulations. Plaintiffs' reliance on these reviews is insufficient to state a plausible claim that Defendant's Hypoallergenic claims are unlawful under California law.

The Breast Cancer Prevention article also noted that 56% of the "2,989 chemicals evaluated . . . had minimal or no hazard data . . . mean[ing] that over half of the fragrance chemicals have not been sufficiently studied or well tested to determine if they are harmful to human health . . . ." *Id.* at ¶ 10, Ex. 8, p. 15. This also means that the capacity of the specific, unidentified fragrance agents in the Products' formulations to cause allergic reactions or skin sensitivity may be completely unknown, indicating nothing more than a "sheer possibility" that Defendant has acted unlawfully. The Storrs "Allergen of the Year" article has superficial rhetorical appeal, but the author expressly argues *against* the conclusion that Plaintiffs draw from it. *Id.* at ¶ 11, Ex. 9. He explicitly criticized other researchers for blurring the line between positive test results and real-world disease: "In short, articles about 'fragrance allergy' are often no more than documentations of the frequency of patch-test reactions . . . [and] the imprecise language used in this literature has led clinicians to believe that fragrance allergy (clinical ACD) is much more common than it really is." *Id.* at p. 4. The remaining citations merely acknowledge that some fragrance agents are allergens, *id.* at ¶¶ 12-15, Exs. 10-13, which does not make it any more plausible that the particular fragrance blends used in the Products render the Hypoallergenic representations to be false or deceptive.

**(iv) Plaintiffs' own scientific sources fundamentally undermine Plaintiffs' chamomile theory.**

The cited studies contradict Plaintiffs' allegation that the mere presence of chamomile extract in the wipes, in any amount, means that the Products were not formulated to reduce the

likelihood of an allergic reaction.

The single-most informative article is the Johnson review—but not for the reason that Plaintiffs allege. *Id.* at ¶ 23, Ex. 21. The review summarized various assessments of the safety of certain Chamomile-derived ingredients in various applications using a range of concentrations (from 0.1% to 87.5%) in humans and other animals. *Id.* at pp. 52S-54S Table 1. Several of the cited studies tested Chamomilla Recutita (Matricaria) flower extract, the specific chamomile-derived ingredient in the Products, at low concentrations. Doc. 1, ¶ 26 n.25. One study involved patch testing a 0.3% concentration, which "did not induce skin irritation in any of the patients tested." Skoczylas Decl., ¶ 23, Ex. 21, p. 66S. Another study evaluated "facial cleansing and makeup remover towelettes"—wipes—"containing 0.01% of the extract." *Id.* The "wipes . . . did not cause skin irritation or allergic contact dermatitis in any of the patients tested." *Id.* This "stark disconnect between the scientific studies and the claims made" on Amazon about the Products' hypoallergenicity is fatal to Plaintiffs' CLRA, UCL, and FAL claims.

Plaintiffs' remaining sources relating to chamomile do nothing to blunt the force of the Johnson review. The 2008 Paulsen study tested patients with confirmed allergies to chamomile or plants in the same family (Compositae), *id.* at ¶ 22, Ex. 20, p. 16, and the products tested contained many potential allergens besides chamomile, *id.* at p. 17 Table 1. The 2002 Paulsen review similarly summarized testing on patients with known chamomile sensitivities, *id.* at ¶ 16, Ex. 14, p. 193, but actually concluded that German and Roman chamomiles have a "rare" or "probably rare" "prevalence of sensitization" in "herbal remedies and cosmetics" as compared to other members of the Compositae family, *id.* at p. 196 Table 2. The Oakley DermNet review provides an overview of Compositae allergies and describes what Compositae dermatitis "looks like . . . in gardeners, farmers, forestry workers, or florists . . . ." *Id.* at ¶ 17, Ex. 15, p. 6. Studies and reviews involving such a specific subset of people or route of exposure are unhelpful here.

Patient information leaflets providing guidance to people with chamomile and chamomile-family allergies say nothing—in either direction—about whether the Products were formulated to reduce the likelihood of an allergic reaction. Skoczylas Decl., ¶¶ 18, 20, Exs. 16, 18. Nor does the availability of chamomile patch tests in specialized diagnostic testing kits. *Id.* at ¶ 19, Ex. 17. And

the eighth cited source, the Balsam of Peru article, is not about chamomile at all. *Id.* at ¶ 21, Ex. 19.

Without the support of any of the studies, reviews, and other sources cited in the Complaint, Plaintiffs do not plausibly allege violations of the CLRA, UCL, and FAL based on the Hypoallergenic representations. These claims should, therefore, be dismissed.

**3. Plaintiffs' Scented claims fail because the Products' front labels tell consumers what the Products smell like, not the ingredient imparting that smell.**

Plaintiffs do not allege that any of the Products are not scented as labeled—that the Shea Butter variety does not smell of shea butter and coconut or that the Mint Chill variety does not smell of mint and eucalyptus. Instead, they allege that a reasonable consumer would expect the Products' scents to "derive[] predominantly, if not exclusively, from those named ingredients." Doc. 1, ¶ 42. The analogy to flavor-labeling cases is apt: like a flavor descriptor, a scent descriptor tells consumers what a product smells like, not which ingredients create that sensory impression. And courts across the country have squarely rejected the same inference in flavor cases, holding that an unqualified sensory descriptor conveys what a product will taste like, not the source of that taste. The same reasoning compels the dismissal of Plaintiffs' Scented claims.

**(a) A sensory descriptor is not an ingredient claim.**

Courts evaluating flavor-labeling claims distinguish an unqualified sensory descriptor—a word or phrase identifying what the product tastes like (*e.g.*, "lemon flavored")—from an affirmative representation about what a product is made with or the ingredient providing the flavor (*e.g.*, "contains lemon juice"). Courts treat such a descriptor as "merely a flavor designator, not an ingredient claim," *Clark v. Westbrae Nat., Inc.*, No. 20-cv-03221, 2021 WL 1580827, at *2 (N.D. Cal. Apr. 22, 2021), because its function is to help the shopper "quickly understand the flavor . . . and differentiate between products," *Nacarino v. Chobani, LLC*, No. 20-cv-07437, 2021 WL 3487117, at *5 (N.D. Cal. Aug. 9, 2021) (internal quotation marks omitted). In the context of vanilla-flavored products in particular, "[f]ederal courts have repeatedly rejected the theory that reasonable consumers would interpret the word 'vanilla,' without qualifiers, on a product label to indicate that a product's vanilla flavoring comes exclusively [or predominantly] from the vanilla plant." *Nacarino*, 2021 WL 3487117, at *5 (collecting cases). The argument that a description of a flavor

must match its ingredients is precisely the theory on which Plaintiffs base their Scent Representation claims. Courts in this district have almost uniformly dismissed unqualified flavor claims based on this theory.[13] Courts in other jurisdictions are in accord.[14]

The reasoning of these cases turns on a distinction that applies with full force here: an unqualified sensory descriptor identifies the *character* of the product, not the *source* or *proportion* of the agent that produces it. The same reasoning compels dismissal here. A phrase like "Shea Butter And Coconut Scented" tells the consumer that the Product smells like shea butter and coconut. It says nothing about where the scent comes from—and still less about what proportion of the scent is attributable to any particular ingredient. Accordingly, Plaintiffs' Scent Representation claims fail as a matter of law.

**(b) The ingredient labels confirm, not contradict, the front labels.**

Because the Products' front labels make no representation about the scent source or proportion, this is not a case in which a defendant "misled consumers and then relied on a small-print 'ingredient list' on the alternate side of the packaging in an attempt 'to correct those misinterpretations and provide a shield for liability for the deception.'" *Collyer*, 712 F. Supp. 3d at 1286 (quoting *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)). But even where

---

[13] *See, e.g.*, *Collyer v. Catalina Snacks Inc.*, 712 F. Supp. 3d 1276, 1286 (N.D. Cal. 2024) (dismissing CLRA, UCL, and FAL claims where "[n]othing on the product labels state or imply that the cereal flavors are derived entirely or predominantly from banana, apple, mint, or honey"); *Fahey v. Whole Foods Mkt., Inc.*, No. 20-cv-06737, 2021 WL 2816919, at *2 (N.D. Cal. June 30, 2021) (holding "that the word 'vanilla' without any qualifying terms does not lead a reasonable consumer to believe that the vanilla flavor came exclusively or predominantly from vanilla beans" and dismissing CLRA, UCL, and FAL claims); *Robie v. Trader Joe's Co.*, No. 20-cv-07355, 2021 WL 2548960, at *5 (N.D. Cal. June 14, 2021) (same); *see also Harris v. McDonald's Corp.*, No. 20-cv-06533, 2021 WL 2172833, at *2 (N.D. Cal. Mar. 24, 2021) (explaining that a plaintiff's insistence that an unqualified flavor descriptor is misleading "plainly is a legal conclusion that is not deemed true even on a motion to dismiss").

[14] *See, e.g.*, *McCoy v. Nestle USA, Inc.*, 716 F. Supp. 3d 1228, 1234 (N.D. Fla. 2024) ("Here, too, the label's use of the word 'lime' and depiction of lime wedges represents only that the Product is lime flavored."); *Donadio v. Bayer HealthCare LLC*, No. 6:22-cv-06521, 2024 WL 1157044, at *3 (W.D.N.Y. Mar. 18, 2024) ("The use of 'Honey Lemon Zest' as a phrase—or even title—is a clear indication that it refers to the flavor of the product, and not to individual ingredients."); *Akers v. Costco Wholesale Corp.*, 631 F. Supp. 3d 625, 633 (S.D. Ill. 2022) ("Here, black raspberry is clearly a flavor claim, not an ingredient claim.").

there is no front-label deception to be dispelled, the ingredient "can [still] ameliorate any tendency of the label to mislead." *Nacarino*, 2021 WL 3487117, at *7 (internal quotation marks omitted) (alteration in original). Here the ingredient list is fatal to Plaintiffs' theory. Just as the presence of "natural flavors" adjacent to "vanilla extract" "would alert a reasonable consumer to the likelihood that vanilla extract is not the exclusive source of vanilla flavoring in the yogurt," *id.* at *6, the Products' disclosure of "fragrance," listed ahead of the botanicals identified elsewhere on the labeling, puts any consumer with an interest in the question on notice that the botanicals are not the exclusive or predominant scent source.

In the absence of any deception, the Court should dismiss Counts I, II, and III with respect to the Scented Representations.

#### 4. Plaintiffs' Fragrance Free claim fails because they do not allege that the wipes at issue have a perceptible smell.

Plaintiffs' Fragrance Free claim hinges on a definition that their implausible factual allegations do not satisfy. Specifically, Plaintiffs allege that "[a] reasonable consumer understands "Fragrance Free" and "Unscented" to mean that the Product does not contain ingredients that *function* as fragrances . . . ." Doc. 1, ¶ 43. Merriam-Webster defines "function" as a "characteristic behavior of a chemical compound due to a particular reactive unit." Under that definition, Plaintiffs allege that a reasonable consumer understands "Fragrance Free" to mean containing no odor-causing agents. *Id.* Although chamomile *can* function as a fragrance, Plaintiffs do not allege that it functions as a fragrance in Defendant's Fragrance Free wipes. Indeed, they do not allege that the wipes have a perceptible smell. Chamomile's capacity to function as a fragrance makes Plaintiffs' theory *possible* but not *plausible*. That chamomile *can* act as a fragrance agent only makes Plaintiffs' Fragrance Free allegation *possible*; it does not make it *plausible*. Furthermore, because chamomile extract is an ingredient of every one of the Products at issue, regardless of their advertised scent, Plaintiffs' allegations more plausibly show that the chamomile ingredient functions as an anti-inflammatory, skin-soothing agent in the Products, not as a fragrance.[15]

[15] *See* Skoczylas Decl., ¶ 22, Ex. 20, p. 191 (noting that chamomile has been shown to have "anti-inflammatory" and "wound-healing" effects); *id.* at ¶ 31, Ex. 29 (stating that "[c]osmetic companies

Because the Complaint contains no factual allegations indicating why the "Fragrance Free" representation on the "Fragrance Free" Product label is false or misleading, their "Fragrance Free" claim does not satisfy Rule 9(b), warranting its dismissal. *See Hadley*, 243 F. Supp. 3d at 1090.

**5. Plaintiffs' claims under the UCL's "unlawful" and "unfair" prongs are as defective as their claims under the UCL's "fraudulent" prong.**

In addition to the "fraudulent" prong, a plaintiff can bring a cause of action for UCL violations based on "unlawful" or "unfair" conduct. Here, Plaintiffs fail to plausibly allege that the Plant Based, Hypoallergenic, Fragrance Free, and Scented Representations are unlawful or unfair.

The UCL's "unlawful" prong does not provide an "independent right to sue." *Mejia v. Chipotle Mexican Grill, Inc.*, 793 F. App'x 519, 521 (9th Cir. 2019). Rather, the "unlawful prong of the UCL creates an independent action when a business practice violates some other law," including the CLRA and FAL. *Portelli v. WWS Acquisition, LLC*, No. 17-cv-2367, 2018 WL 9539773, at *4 (S.D. Cal. July 6, 2018) (internal quotation marks omitted). Accordingly, a plaintiff cannot state a claim under the UCL's unlawful prong without adequately alleging a violation of any state or federal law. *Id.*

Here, Plaintiffs predicate their "unlawful" UCL claim on Defendant's alleged violations of the CLRA and FAL, in addition to violations of the Sherman Food, Drug, and Cosmetic Law (Cal. Health & Safety Code §§ 110390, 110395, 110398, 110400, 111730, 111735, 111745, 111765, and 111770), 21 U.S.C. § 362, 21 C.F.R. §§ 701.1, and 701.3, and 15 U.S.C. § 45(a) (through FTC's Guides for the Use of Environmental Marketing Claims, 16 C.F.R. part 260). Doc. 1, ¶¶ 46-47, 51-52. Plaintiffs have not adequately alleged that Defendant has violated any of these additional laws. All of the Health & Safety Code sections prohibit misbranding, mislabeling, and false or misleading advertising generally, as does 21 U.S.C. § 362. As set forth above, the Products' labeling passes the reasonable consumer test in every respect.

---

use [chamomile] mainly for its **anti-inflammatory properties**" and noting that it "also has **some antioxidant activity** . . . ." (emphasis in original).

21 C.F.R. § 701.3 requires a cosmetic's ingredients to be listed "in descending order of predominance." 21 C.F.R. § 701.3(a).[16] But Plaintiffs do not allege that the Products' ingredients are not, in fact, listed in descending order by weight, only that "the placement of the named botanicals at or near the end of the list reflects that they are present in only *de minimis* amounts." Doc. 1, ¶ 47. 21 C.F.R. § 701.1, which Plaintiffs cite in connection with their Scented claims, prohibits cosmetics labeling that "includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling." 21 C.F.R. § 701.1(b). Although the Complaint's allegations are not a picture of clarity, Plaintiffs do not allege that Defendant has hidden an ingredient responsible for the advertised scent on the Products' packaging. And, again, the Products' labeling would not suggest to a reasonable consumer that the botanicals identified in the name or on the packaging are the only or predominant ingredients responsible for the Products' scents. *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 978 (7th Cir. 2020) (observing that 21 C.F.R. § 701.1(b) "does not add anything . . . to the relevant state law"); *Wong v. Iovate Health Scis. U.S.A. Inc.*, No. 2:24-cv-00901, 2025 WL 821451, at *10 (E.D. Cal. Mar. 14, 2025) (applying the state reasonable consumer test to alleged violations of Title 21 of the C.F.R.). Because Plaintiffs have not plausibly alleged a violation of any predicate statute, their UCL claim under the unlawful prong fails as well.[17]

The Court can quickly dispose of Plaintiffs' "unfair" prong claims. "In this District, when plaintiff's claim under the unfair prong overlaps entirely with the conduct alleged in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs . . . do not survive." *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (alteration in original) (internal quotation marks omitted). Count II should, therefore, be dismissed in its entirety.

---

[16] Notably, 21 C.F.R. § 701.3 permits combinations of ingredients that impart a scent or taste to be identified as only "fragrance" or "flavor," without any further detail. 21 C.F.R. § 701.3(a).

[17] *See, e.g.*, *Hadley*, 243 F. Supp. 3d at 1099 (dismissing UCL claim under unlawful prong "because Plaintiff has failed to adequately allege a violation of the reasonable consumer test").

**B. Plaintiffs' express warranty and unjust enrichment claims fail along with their CLRA, UCL, and FAL claims.**

To state a claim for breach of express warranty under California law, Plaintiffs must allege that Defendant's statements constitute an "affirmation of fact or promise made by the seller to the buyer . . . ." Cal. Com. Code § 2313(1)(a). Here, Plaintiffs have not alleged a promise that Defendant broke with respect to the Products' features, defeating Count V. Failure to establish consumer deception is also fatal to a breach of warranty claim based on the same representations. S*ee Azoulai v. BMW of N. Am. LLC*, 16-cv-00589, 2017 WL 1354781, at *7 (N.D. Cal. Apr. 13, 2017). "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Because, as set forth above, Plaintiffs cannot establish that Defendant's conduct was deceptive, it cannot be considered "unjust." *See Ebner*, 838 F.3d at 968.

Because Plaintiffs' express warranty and unjust enrichment claims "rise and fall on whether Plaintiff[s] has been able to plausibly allege false or misleading representations," the Court should dismiss them as well. *Robie v. Trader Joe's Co.*, No. 20-CV-07355, 2021 WL 2548960, at *6 (N.D. Cal. June 14, 2021) (dismissing warranty, fraud, and unjust enrichment claims after dismissing CLRA, UCL, and FAL claims).

**C. Plaintiffs lack standing to seek injunctive relief because they face no immediate, concrete harm.**

Plaintiffs do not plausibly allege that they face any threat of immediate or future harm owing to the labeling of the Products. Plaintiffs therefore lack standing to seek injunctive relief.

To be entitled to injunctive relief, a plaintiff must allege a "real and immediate" threat of future harm that is not "conjectural" or "hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992)). Where, as here, the plaintiff alleges damages as redress for the defendant's conduct—compensation for purchases the plaintiff would not have made—the "mere fact of a past purchase

does not automatically give rise to an inference of a desire for future purchases[.]" *Cordes v. Boulder Brands USA, Inc.*, No. 18-cv-6534, 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018). Rather, to have standing to enjoin allegedly wrongful conduct in the future, a plaintiff must allege an intention or likelihood of purchasing the defendant's product again.

The Ninth Circuit's opinion in *Davidson v. Kimberly-Clark Corporation*, 889 F.3d 956 (9th Cir. 2018), opened the door to the possibility that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an actual and imminent, not conjectural or hypothetical threat of future harm." *Id.* at 969 (internal quotation marks omitted). Such cases arise when the consumer alleges that she cannot "rely on the product's advertising or labeling in the future" because she has no way of determining whether the product is improved or not. *Id.* at 970 (noting that "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future").

Plaintiffs cannot meet this standard. Now that Plaintiffs know—contrary to what they once believed—that the Products contain synthetic ingredients, alleged allergenic components, and fragrance, they "cannot claim to be misled [in] the future. This is not a situation where consumers are unable to know on their own whether the representation is true." *Miller v. Arizona Beverages USA LLC*, No. 23-cv-03540, 2024 WL 5339466, at *1 (N.D. Cal. June 5, 2024). Accordingly, all of Plaintiffs' claims for injunctive relief should be stricken pursuant to Rule 12(b)(1).[18]

**D. Plaintiffs lack standing to bring claims on behalf of multistate and nationwide classes because they only purchased DUDE Wipes in California.**

Counts IV, V, and VI should be dismissed for lack of standing because both Plaintiffs are California residents who purchased the Products exclusively in California—Ms. Roman in San Jose,

[18] *See, e.g.*, *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1127 (S.D. Cal. 2021) (concluding that plaintiffs could determine whether "no preservatives" label was misleading because they could read the ingredient label); *Shanks v. Jarrow Formulas, Inc.*, No. 18-cv-09437, 2019 WL 7905745, at *5 (C.D. Cal. Dec. 27, 2019) (finding that plaintiff could not be deceived because he could "easily figure out whether Defendant's coconut oil still contains coconut oil and fat by simply looking at Defendant's label").

Doc. 1 ¶ 5, and Mr. Dawe in San Diego *Id.* at ¶ 7—and neither Plaintiff alleges any purchase, transaction, or exposure to the challenged labeling in any other state. As the Ninth Circuit has explained, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). The Court also recognized that consumer protection statutes, warranty laws, and unjust enrichment doctrines vary materially among the states in their elements, scienter requirements, reliance standards, and available remedies. *Id.* at 591. Where those material variations exist and no named plaintiff transacted in a given state, "all claims based on that state's laws are subject to dismissal." *Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013); *see also Mollicone v. Universal Handicraft, Inc.*, No. 2:16-cv-07322, 2017 WL 440257, at *9 (C.D. Cal. Jan. 30, 2017) ("[T]he majority of courts . . . have concluded that when a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal.") (internal quotation marks omitted).[19]

This case is on all fours with that authority. Plaintiffs purport to invoke the consumer protection laws of more than thirty states (Count IV), the express warranty laws of dozens of states (Count V), and the unjust enrichment doctrines of every state (Count VI), yet they purchased the Products and saw and relied upon the challenged labeling only while in California. Accordingly, Counts IV, V, and VI should be dismissed with respect to any state other than California.

### E. Plaintiffs have not complied with the CLRA's notice requirement.

The CLRA requires a plaintiff to provide notice to a defendant alleged to have violated the Act at least 30 days before filing suit. Cal. Civ. Code § 1782(a); *see also Wehlage v. EmpRes Healthcare Inc.*, No. 10-cv-5839, 2012 WL 380364, at *8 (N.D. Cal. Feb. 6, 2012). Where, as here, the plaintiff seeks money damages, the failure to comply with this notice requirement requires

[19] *See also, e.g.*, *DeArmey v. Hawaiian Isles Kona Coffee Co.*, No. 19-cv-432, 2019 WL 6723413, at *3-4 (C.D. Cal. July 22, 2019) (dismissing nationwide claims because the sole plaintiff "does not allege that he purchased [the product] anywhere other than California"); *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1174-76 (N.D. Cal. 2017).

dismissal of the CLRA claim, at least until the plaintiff complies with her obligations under the Act.[20] Plaintiffs' CLRA notices fall short of the CLRA's notice requirement. Both Roman's and Dawe's notices raise only their "99% Water & Plant Based Ingredients" and "Hypoallergenic" claims. Skoczylas Decl., ¶¶ 32-33, Exs. 30-31. Neither asserts the "Scented" or "Fragrance Free" claims alleged in the Complaint. *Id.* The Court should, therefore, dismiss Plaintiffs' "Scented" and "Fragrance Free" CLRA claims. *See Wehlage*, 2012 WL 380364, at *7.

## V. CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' Class Action Complaint with prejudice and, additionally or alternatively, strike Plaintiffs' claims for injunctive relief and dismiss Plaintiffs' "Scented" and "Fragrance Free" CLRA claims.

Dated: August 28, 2026

Respectfully submitted,

**DUDE PRODUCTS, LLC**

By: */s/ Christine E. Skoczylas*
Christine E. Skoczylas

**BARNES & THORNBURG LLP**
Paul Olszowka (admitted *PHV*)
*Paul.Olszowka@btlaw.com*
Christine E. Skoczylas (admitted *PHV*)
*Christine.Skoczylas@btlaw.com*
One N. Wacker Dr., Suite 4400
Chicago, IL 60606-2833
Telephone: (312) 357-1313
Facsimile: (312) 759-5646

Amy C. Poyer (SBN 277315)
*apoyer@btlaw.com*
2029 Century Park East, Suite 300
Los Angeles, CA 90067-3012
Telephone: 310-284-3880
Facsimile: 310-284-3894

*Attorneys for Defendant Dude Products, LLC*

[20] *See Wehlage*, 2012 WL 380364, at *8 (dismissing CLRA claims until the plaintiffs showed that they complied with the notice requirement and the 30-day notice period had passed); *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1260-61 (2009) (holding that dismissal is mandatory when a plaintiff fails to comply with the CLRA's notice requirement).